## DOLLAR S. S. LINE v. HYDE, Collector of Customs.

Circuit Court of Appeals, Ninth Circuit.
January 23, 1928.

No. 5129.

Aliens ⬄57—Transportation company held not subject to fine for bringing in domiciled alien from temporary absence (Immigration Act 1917, § 3 [8 USCA § 136]; § 9, as amended by Act May 26, 1924, § 26 [8 USCA § 145]).

Under the proviso of Immigration Act 1917, § 9, as amended by Act May 26, 1924, § 26 (8 USCA § 145), that "nothing contained in this section shall be construed to subject transportation companies to a fine for bringing to ports of the United States aliens who are by any of the provisos or exceptions to section 3 of this act exempted from the excluding provisions of said section," and the proviso of section 3 (8

USCA § 136), that "aliens returning after a temporary absence to an unrelinquished United States domicile of seven consecutive years may be admitted in the discretion of the Secretary of Labor," a transportation company is not subject to fine for bringing in such returning alien, though with knowledge that he is afflicted with leprosy, a disease which would exclude him if coming for the first time as an immigrant.

At Law. Action by the Dollar Steamship Line against Jeannette A. Hyde, Collector of Customs, Port of Honolulu. Judgment for defendant, and plaintiff brings error. Reversed.

Thompson, Cathcart & Beebe, F. E. Thompson, E. H. Beebe, and M. H. Easton, all of Honolulu, Hawaii, for plaintiff in error.

Sanford B. D. Wood, U. S. Atty., and Charles H. Hogg, Asst. U. S. Atty., both of Honolulu, Hawaii, and Geo. J. Hatfield, U. S. Atty., and T. J. Sheridan, Asst. U. S. Atty., both of San Francisco, Cal., for defendant in error.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. After a temporary absence of three months in Japan, of which country he was a subject, Seiichi Yamate sought to return to the territory of Hawaii, where he had resided for 18 years. He had not relinquished his residence in Hawaii, and held a permit to re-enter the United States. Upon November 17, 1925, the plaintiff in error accepted him at Yokohoma as a passenger upon its steamship President Lincoln, bound for San Francisco and touching at the port of Honolulu. Upon arrival of the steamer at Honolulu a few days later, the alien was refused admission to the United States for the reason that he was afflicted with leprosy. Not only was it found upon investigation that he was so afflicted, but the Secretary of Labor further held that the disease might have been detected by means of a competent medical examination at the port of embarkation. Upon such determination by the Secretary, the collector of customs at Honolulu, acting under the provisions of section 9 of the Immigration Act of 1917, as amended by section 26 of the Immigration Act of 1924 (8 USCA § 145), imposed upon the plaintiff in error a fine of $1,000 and the additional sum of $40, the amount of the alien's fare. To avoid great loss, plaintiff paid the $1,040 under protest, and by this action seeks recovery thereof. The court sustained a demurrer to the second amended complaint, in which the facts are

fully exhibited, and, the plaintiff having declined to plead further, judgment of dismissal was entered, from which plaintiff brings error.

While plaintiff alleges that before it accepted him as a passenger it acted upon competent medical advice that the alien was free from disease, it does not challenge the propriety or conclusiveness of the Secretary's findings, and therefore it stands as a fact that when the alien went aboard at Yokohoma he was afflicted with leprosy and the plaintiff was chargeable with knowledge thereof. In support of its position that, notwithstanding such fact and knowledge, it was not subject to a fine, plaintiff relies upon two provisos of the act of 1917. One of these, in section 3, is as follows: "That aliens returning after a temporary absence to an unrelinquished United States domicile of seven consecutive years may be admitted in the discretion of the Secretary of Labor, and under such conditions as he may prescribe." 39 Stat. 875 (8 USCA § 136). The other, in section 9 of the act as amended, is as follows: "That nothing contained in this section shall be construed to subject transportation companies to a fine for bringing to ports of the United States aliens who are by any of the provisos or exceptions to section 3 of this act exempted from the excluding provisions of said section." 43 Stat. 166.

Unquestionably it is the policy of the immigration laws to deny admission to this country of aliens afflicted with dangerous contagious diseases, including leprosy, and generally speaking the excluding provisions are quite as applicable to those who have for a period been domiciled here as to those who for the first time seek to enter. Lapina v. Williams, 232 U. S. 78, 34 S. Ct. 196, 58 L. Ed. 515; Lewis v. Frick, 233 U. S. 291; 34 S. Ct. 488, 58 L. Ed. 967; Hee Fuk Yuen v. White (C. C. A.) 273 10. And it is true that, apart from its proviso, section 3 of the act of 1917 positively and unconditionally excludes every alien afflicted with a loathsome or dangerous contagious disease. But in like terms it prohibits the entry of other classes whose disqualifications involve what would seem to be less cogent reasons for exclusion, and the power which the proviso confers upon the Secretary of Labor is apparently unrestricted in scope. The provision neither expresses an exception nor furnishes any basis for interpolating one by judicial construction. It may be said to be highly improbable that Congress contemplated the re-admission of an alien afflicted with a loath-

some and contagious disease, for the reason merely that he has been domiciled in this country. But, appreciating the difficulty of a classification, which would avoid hardship and meet all the conditions that might arise, it may very well have been willing to rely upon the judgment of the Secretary. When we consider the history of immigration legislation (see Lapina v. Williams, supra) and judicial decisions construing it, it is reasonable to conclude that Congress intended thus to adopt a course intermediate between the earlier rule, under which returning domiciled aliens could demand admission as a matter of right, and the later rule, under which they were put on the same footing with those who for the first time sought entry. In operation, neither rule had been free from objection.

What action the Secretary would probably take in the case of a domiciled alien afflicted with a contagious disease is an immaterial consideration; we are concerned only with the extent of his power, and not with the considerations which may weigh with him in the exercise of his discretion. It would seem to follow that, if the Secretary has such power, the alien must be permitted to invoke the exercise thereof by presenting himself at a port of entry, and hence a carrier cannot be penalized for transporting him for that purpose. Compagnie Francaise, etc., v. Elting (C. C. A.) 19 F.(2d) 773.

The judgment is reversed.