**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

YEWHALASHET ABEBE,

*Petitioner,*

v.

ALBERTO R. GONZALES, Attorney
General,

*Respondent.*

No. 05-76201

Agency No.
A26-810-941

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
December 4, 2006—San Francisco, California

Filed July 9, 2007

Before: Dorothy W. Nelson, Robert E. Cowen,* and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge D.W. Nelson;
Concurrence by Judge Berzon

---

*The Honorable Robert E. Cowen, Senior United States Circuit Judge
for the Third Circuit, sitting by designation.

8099

## COUNSEL

Robert B. Jobe and Fatma Marouf, Law Office of Robert B. Jobe, San Francisco, California, (briefed), Zachary Nightingale, Van Der Hout, Brigagliano & Nightingale, LLP, San Francisco, California, (argued), for the petitioner.

Song E. Park (briefed) and John C. Cunningham (argued), United States Department of Justice, Office of Immigration Litigation, Washington, D.C., for the respondent.

Zachary Nightingale and Avantika Shastri, Van Der Hout, Brigagliano & Nightingale, LLP, San Francisco, California, filed a brief for the Immigration Law Clinic of the School of Law at the University of California, Davis, the Immigrant Legal Resource Center, and the National Immigration Project of the National Lawyers Guild as *amici curiae* in support of petitioner.

## OPINION

D.W. NELSON, Senior Circuit Judge:

Yewhalashet Abebe ("Abebe" or "Petitioner") seeks review

of a decision by the Board of Immigration Appeals ("BIA" or "Board") finding him ineligible to apply for discretionary relief from removal under former section 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(c) (Supp. IV 1992) (repealed 1996),[1] because the ground of deportability charged by the government—conviction of an "aggravated felony" within the meaning of INA § 101(a)(43)(A), 8 U.S.C. § 1101(a)(43)(A), which defines the term to include "sexual abuse of a minor" crimes—lacks a comparable ground of inadmissibility under INA § 212(a), 8 U.S.C. § 1182(a). Abebe further challenges the BIA's refusal to review a claim raised in connection with his application for withholding of removal under INA § 241(b), 8 U.S.C. § 1231(b). We perceive no error with respect to the availability of § 212(c) relief and deny the petition on that issue. In a separate memorandum disposition filed concurrently herewith, we remand to the Board for an initial determination on the merits of the withholding claim.

## I. BACKGROUND[2]

Petitioner is a citizen of Ethiopia who entered the United States as a refugee and became a lawful permanent resident ("LPR") in 1984. In 1992, pursuant to a guilty plea, Abebe was convicted of committing "lewd/lascivious conduct upon a child" in violation of California Penal Code § 288(a). He was sentenced to one year in jail and three years of supervised probation. In addition, Abebe was required to register as a sex offender and to provide registration updates to local police within five days of his birthday for each year he remained in California. After serving his sentence, Petitioner's only other contact with the criminal justice system occurred in 2001

---

[1]Unless otherwise indicated, statutory references are to the INA. Parallel citations to the United States Code are provided occasionally.

[2]In this opinion, we recount only those facts relevant to the denial of § 212(c) relief, and we omit facts pertinent to the withholding of removal claim.

when he failed to renew his sex offender registration by the statutory deadline. He was convicted of an offense under California Penal Code § 290(g)(2) and sentenced to 120 days in jail.

In 2005, the government commenced removal proceedings asserting that Abebe was deportable on the independent grounds that he (1) had been convicted of two crimes involving moral turpitude ("CIMT"), INA § 237(a)(2)(A)(ii), 8 U.S.C. § 1227(a)(2)(A)(ii); and (2) had been convicted of an aggravated felony, INA § 237(a)(2)(A)(iii)—namely, the 1992 "sexual abuse of a minor" conviction. The IJ dismissed the first charge after the government conceded that Abebe's failure to update his sex offender registration was not a CIMT. The second charge was sustained. Abebe does not contest the finding of removability.

Petitioner sought several forms of relief from removal including a discretionary waiver of inadmissibility authorized by former § 212(c). Although § 212(c) was repealed in 1996, because Abebe's 1992 conviction was obtained through a guilty plea, if he "would have been eligible for § 212(c) relief at the time of [his] plea under the law then in effect," he remained so during the removal proceedings. *INS v. St. Cyr*, 533 U.S. 289, 326 (2001) (holding that Congress did not unmistakably indicate an intention to apply the repeal of § 212(c) retroactively to aliens who may have relied on its availability in deciding whether to forgo their right to a criminal trial). At the time of Abebe's plea, § 212(c) stated that

> [a]liens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) [(establishing classes of aliens to be excluded from admission to the United

> States)]. . . . The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years.

8 U.S.C. § 1182(c) (Supp. IV 1992).

On the face of the statute, § 212(c) does not apply to Abebe's case because he is not returning from a temporary overseas journey and is not facing exclusion from admission to the United States under § 212(a) but, instead, is being deported from the interior of the country on the authority of § 237(a). However, as described below, through a decades-long series of administrative and judicial decisions, the Attorney General's statutory authority to grant relief from *exclusion* has been interpreted to carry with it a similar authority to grant relief from *deportation* under certain circumstances. Even so, the IJ held that there was no authority to grant relief to Abebe because the ground of deportability sustained— conviction of an aggravated felony/sexual abuse of a minor crime—lacked a comparable charge of inadmissibility under § 212(a).

Relying on *Matter of Blake*, 23 I. & N. Dec. 722 (BIA 2005), and a recently promulgated regulation, 8 C.F.R. § 1212.3(f)(5), the BIA affirmed. In his petition for review, Abebe argues that the Board's interpretation of former § 212(c) must be rejected because: (1) it is invalid as a matter of statutory construction; (2) it violates principles of equal protection; and (3) it is impermissibly retroactive as applied to him.[3] We disagree. In so doing, we join the First, Third,

---

[3]Abebe also takes issue with *Matter of Brieva-Perez*, 23 I. & N. Dec. 766 (BIA 2005), decided shortly after *Blake*. In *Brieva-Perez*, the BIA applied the comparable grounds test to deny § 212(c) relief to an alien found deportable due to a conviction characterized as a "crime of violence" and hence an aggravated felony under INA § 101(a)(43)(F). The attacks leveled against *Brieva-Perez* are identical to the *Blake* challenges and are rejected for the same reasons.

Fifth, and Seventh Circuits, *Dalombo Fontes v. Gonzales*, 483 F.3d 115 (1st Cir. 2007); *Kim v. Gonzales*, 468 F.3d 58 (1st Cir. 2006); *Caroleo v. Gonzales*, 476 F.3d 158 (3d Cir. 2007); *Brieva-Perez v. Gonzales*, 482 F.3d 356 (5th Cir. 2007); *Avilez-Granados v. Gonzales*, 481 F.3d 869 (5th Cir. 2007); *Vo v. Gonzales*, 482 F.3d 363 (5th Cir. 2007); *Valere v. Gonzales*, 473 F.3d 757 (7th Cir. 2007); *see also Rubio v. U.S. Atty. Gen.*, 182 Fed. Appx. 925 (11th Cir. 2006) (unpublished), and part ways with the Second, *Blake v. Carbone*, ___ F.3d ___, No 05-2988-AG(L), 2007 WL 1574760 (2d Cir. June 1, 2007).

## II.  STATUTORY  BACKGROUND—HISTORY  OF § 212(c)

The immigration laws have long distinguished between the exclusion of non-citizens seeking to enter the United States and the deportation of those who have already crossed our borders. *See* Immigration Act of 1917 ("1917 Act") §§ 3, 19, 39 Stat. 875, 889 (defining classes of excludable[4] and deportable aliens respectively); Immigration and Nationality Act of 1952 ("1952 Act") §§ 212, 241, 66 Stat. 182, 204 (same).[5] There is no question that Congress has the power to establish different standards for admission into the United States and

---

[4]The terms "excludable" and "inadmissible" are synonymous and will be used interchangeably in this opinion.

[5]In addition to the substantive differences, prior to 1997, the immigration laws provided for separate exclusion and deportation proceedings. The procedural dissimilarities were largely eliminated by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, Div. C., Title III, Subtitle A, 110 Stat. 3009-575 *et seq.*, and replaced by a unified "removal" process under INA § 240, 8 U.S.C. § 1229a. The homogenization is not complete, however, and certain procedural niceties continue to depend on whether an alien is seeking admission or is charged with deportability. *See, e.g.*, INA § 240(c), 8 U.S.C. § 1229a(c) (describing differences in burden of proof). The substantive distinctions between inadmissibility and deportability remain. INA §§ 212(a), 237(a), 8 U.S.C. § 1182(a), 1227(a).

deportation therefrom. For instance, it was certainly rational for Congress to turn away aliens at the border who were "afflicted with . . . loathsome or dangerous contagious disease[s]," 1917 Act § 3, 39 Stat. 875, but to allow aliens who contracted such diseases after entry to remain. The immigration laws generally reflect a policy choice that what might count as a good reason to deny admission to a first-time entry-seeker might not be a good reason to expel a resident alien who has developed ties to this country. However, in many cases, an alien who has once surmounted the initial barriers to admission will nevertheless be assimilated to the position of a first-time entry-seeker if he travels outside the territorial United States and attempts to return.[6] This system makes travel hazardous for the long-term resident and conflicts with the intuitive appeal of the exclusion/deportation distinction.

Consequently, the immigration laws historically provided preferential treatment to long-term resident aliens who sought to re-enter the United States after a trip abroad. Congress

---

[6]This is a simplification. Whether an alien who gains admission at one time and subsequently travels abroad must face the same barriers to (re)entry as a first-time visitor is a complex matter. In the early immigration cases, if a previously admitted alien "departed from the country, even for a brief space of time[,] . . . he subjected himself to . . . exclusion" upon his return. *Lewis v. Frick*, 233 U.S. 291, 297 (1914); *see also, e.g.*, *United States ex rel. Volpe v. Smith*, 289 U.S. 422, 425 (1933); *Dollar S.S. Line v. Hyde*, 23 F.2d 910, 911 (9th Cir. 1928). Over time, however, some traveling long-term resident aliens were effectively exempted from the grounds of excludability. The 1952 Act provided that a long-term LPR whose departure from the United States was unintentional or involuntary would not be deemed to be seeking entry upon his return. 1952 Act § 101(a)(13), 66 Stat. 167. In *Rosenberg v. Fleuti*, 374 U.S. 449, 462-63 (1963), the Supreme Court held that an LPR returning from an innocent, casual, and brief overseas excursion not intended to meaningfully interrupt his immigration status would not be deemed to be seeking entry. In 1996, IIRIRA § 301(a) modified the statutory text and established six alternative conditions, at least one of which is necessary to finding that an LPR is "seeking an admission" into the United States. 110 Stat. 3009-575 (codified at 8 U.S.C. § 1101(a)(13)(C)). We express no opinion as to whether IIRIRA displaced the former rules.

could have exempted such aliens from the excludability tests altogether but generally chose not to take this approach.[7] Instead, long-term residents returning to the United States have been the beneficiaries of provisions authorizing *discretionary relief* from the grounds of exclusion.

An early version was codified in the seventh proviso to § 3 of the 1917 Act which allowed "aliens returning after a temporary absence to an unrelinquished United States domicile of seven consecutive years [to] be admitted in the discretion of the Secretary of Labor" notwithstanding membership in an excluded class. 39 Stat. 878.[8] In this way, Congress diminished the risks faced by long-term resident aliens who traveled abroad.

Although the seventh proviso only authorized relief from the process of exclusion at the border, it was extended into the deportation context because of the overlap between certain deportation and exclusion provisions. An early case involved a Yugoslavian citizen who attained legal resident status in 1909 and was convicted of larceny—a crime involving moral turpitude—in 1924. *Matter of L—,* 1 I. & N. Dec. 1, 1 (BIA, Att'y Gen. 1940). Under the law then in effect, if an alien committed a CIMT within five years of entry and was sentenced to a term of one year or more he would be deportable. 1917 Act § 19, 39 Stat. 889. Because of the date of the crime and the length of his sentence, Mr. L was not deportable under that provision. *Matter of L—*, 1 I. & N. at 1-3. However, the conviction placed Mr. L within one of the classes to be *excluded* from admission. 1917 Act § 3, 39 Stat. 875 (excluding any person convicted of a CIMT regardless of sentence length or date of commission).

---

[7]*But see* note 6, *supra*, describing circumstances under which traveling long-term residents were not deemed to be seeking entry upon their return.

[8]Responsibility for enforcement of the immigration laws was subsequently transferred to the Department of Justice and the Attorney General. *St. Cyr*, 533 U.S. at 294 n.2.

In 1939, Mr. L traveled to Yugoslavia for two months and returned to the United States. 1 I. & N. Dec. at 2. Upon re-entry, Mr. L's excludability was not detected and he was allowed to return to the United States. *Id.* Several months later, he was arrested and charged with *deportability* under a different clause of § 19 that rendered removable any alien convicted of a CIMT prior to entry. *Id.* at 1-2. The conviction at issue was, of course, the very same 1924 larceny conviction that ought to have made him excludable (and seventh-proviso-eligible) at the time of his 1939 re-entry to the United States. *Id.* at 1-2.

The Attorney General noted that despite the facial limitation of seventh proviso authority to exclusion proceedings, to deny relief simply because Mr. L found himself in deportation proceedings would have frustrated the purpose of the provision. *Id.* at 5. The seventh proviso was meant to diminish the risks of overseas travel by long-term residents. In this case, the failure of the authorities to challenge Mr. L's re-entry converted the ground of excludability triggered by his travel into a ground of deportability for which relief appeared to be unavailable.

> Granted that respondent's departure in 1939 exposed him on return to the peril of a fresh judgment as to whether he should be permitted to reside in the United States, such judgment ought not to depend upon the technical form of the proceedings. . . . [The petitioner] should be permitted to make the same appeal to discretion that he could have made if denied admission in 1939, or that he could make in some future application for admission if he now left the country.

*Id.* at 5-6.

The Attorney General therefore determined that he had authority during deportation proceedings to enter a *nunc pro*

*tunc* correction of the record of Mr. L's last entry to reflect a grant of seventh proviso relief. *Id* at 6. Further, as a result of the retroactive relief from excludability, Mr. L was not deportable under § 19 because "the only ground for deportation is one that might have been removed by discretionary action at [the time of the last entry]." *Id*. The ground of exclusion for which relief was granted, 1917 Act § 3 (excluding "persons who have been convicted of . . . a felony or other crime or misdemeanor involving moral turpitude"), was essentially identical to the corresponding ground of deportation, 1917 Act § 19 ("any alien who was convicted . . . prior to entry, of a felony or other crime or misdemeanor involving moral turpitude" is deportable). Other early cases approved a modest extension of seventh proviso relief into the deportation context where there was a tight connection between the ground of deportability and a corresponding ground of excludability. *See, e.g.*, *Matter of A—*, 2 I. & N. Dec. 459 (BIA 1946, Att'y Gen. 1947).

Section 212 of the Immigration and Nationality Act of 1952 replaced and roughly paralleled § 3 of the 1917 Act and subsection (c) took the place of the seventh proviso.[9] The BIA continued the pre-1952 practice of extending relief into the deportation context where the ground of deportability charged was closely allied to an inadmissibility ground. *See, e.g.*, *Matter of G— A—*, 7 I. & N. Dec. 274, 274 (BIA 1956).

In line with the rationale of the earlier cases, aliens seeking § 212(c) relief in deportation proceedings were required to have *actually traveled abroad* after becoming deportable. *Matter of Arias-Uribe*, 13 I. & N. Dec. 696, 698 (BIA 1971) *aff'd by Arias-Uribe v. INS*, 466 F.2d 1198 (9th Cir. 1972). In *Arias-Uribe*, an alien faced deportation for a narcotics conviction under § 241(a)(11)—a ground that had long been estab-

---

[9]Section 212(c) did not give the Attorney General authority to waive the national security and documentation grounds of excludability listed in §§ 212(a)(26)-(29). 66 Stat. 184 (1952).

lished to correspond to the § 212(a)(23) ground of excludability. 13 I. & N. Dec. at 696-97. However, Arias-Uribe did not leave the United States following his crime and therefore never faced exclusion. *Id*. As a result, the *nunc pro tunc* procedure outlined in *Matter of L—* and other cases was not possible. *Id*. at 697-98.

Under the 1917 Act an alien who had not departed from the United States after becoming deportable could nevertheless utilize the seventh proviso. This was accomplished by granting the alien advance permission to depart voluntarily and return, at which time his excludability would be waived. *Matter of L—*, 1 I. & N. Dec. at 5; *see also, e.g.*, *Matter of A—*, 2 I. & N. Dec. at 461-63. However, Arias-Uribe could not employ this procedure under the 1952 Act. *Arias-Uribe*, 13 I. & N. Dec. at 700; *see also Arias-Uribe*, 466 F.2d at 1199; *Francis v. INS*, 532 F.2d 268, 271-72 (2d Cir. 1976).

As a result, an LPR who wished to take advantage of § 212(c) would be required to leave the United States following the event that rendered him deportable. If mistakenly allowed to re-enter without challenge, he could invoke § 212(c) in later deportation proceedings using the *nunc pro tunc* procedure. In contrast, if the alien remained in the United States and was placed in deportation proceedings, § 212(c) relief was unavailable.

In 1976, the Second Circuit upheld a constitutional challenge asserting that these practices "create[d] two classes of aliens identical in every respect except for the fact that members of one class have departed and returned to this country at some point after they became deportable." *Francis*, 532 F.2d at 272. The court determined under the "minimal scrutiny test" that the disparate treatment applied to members of these classes was not rationally related to any legitimate purpose of the statute and therefore violated the petitioner's right to equal protection of the laws as guaranteed by the Fifth Amendment. *Id*. The BIA acquiesced in the Second Circuit's

decision and withdrew from its position in *Arias-Uribe*. *Matter of Silva*, 16 I. & N. Dec. 26, 30 (BIA 1976). This court subsequently followed suit. *Tapia-Acuna v. INS*, 640 F.2d 223, 225 (9th Cir. 1981).

Although intended to ameliorate the hazards of re-entry faced by long-term residents, § 212(c) was now available to aliens who never traveled at all. However, the BIA has resisted further departures from the statutory text and consistently held that relief is available only for aliens facing deportation on a ground with some tight connection to a ground of excludability that could have been waived under § 212(c) had the alien traveled abroad.

As noted above, most of the early cases involved the CIMT deportation ground which was essentially identical to the CIMT ground of excludability. *See, e.g.*, *Matter of L—*, 1 I. & N. Dec. at 1; *Matter of A—,* 2 I. & N. Dec. at 459. It is also well established that § 212(c) authorizes relief from the narcotics-related grounds of deportation because they have specific counterparts in the grounds of excludability. *Tapia-Acuna*, 640 F.2d at 224; *Matter of Meza*, 20 I. & N. Dec. 257, 258-59 (BIA 1991).

In contrast, the BIA and the courts have regularly denied relief where the ground of deportability lacks a corresponding ground of excludability. For example, aliens charged with deportability for certain weapons offenses, *Matter of Granados*, 16 I. & N. Dec. 726 (BIA 1979); *Cabasug v. INS*, 847 F.2d 1321 (9th Cir. 1988); *Komarenko v. INS*, 35 F.3d 432 (9th Cir. 1994), immigration document fraud, *Matter of Wadud*, 19 I. & N. Dec. 182 (BIA 1984), and entry without inspection, *Matter of T—*, 5 I. & N. Dec. 389, 389-90 (BIA 1953); *Matter of M—*, 5 I. & N. Dec. 642, 647 (BIA 1954); *Leal-Rodriguez v. INS*, 990 F.2d 939, 949-52 (7th Cir. 1993), have all been deemed ineligible for relief on this basis.

In the 1990's, § 212(c) was restricted and eventually eliminated through a series of amendments. The Immigration Act of 1990 ("IMMACT 90") stripped eligibility from any alien who had been convicted of an aggravated felony and served five years or more in prison. Pub. L. No. 101-649, § 511, 104 Stat. 4978, 5052.[10] On April 24, 1996, section 440(d) of the Antiterrorism and Effective Death Penalty Act ("AEDPA") stripped § 212(c) eligibility from any alien deportable because of an aggravated felony conviction (regardless of the length of the sentence), a drug conviction, multiple CIMTs, or certain weapons and national security violations. Pub. L. No. 104-132, § 440(d), 110 Stat. 1277; *St. Cyr*, 533 U.S. at 297 n.7. Finally, in that same year, IIRIRA entirely repealed § 212(c) for proceedings commenced on or after April 1, 1997. Pub. L. No. 104-208, § 304(a)(3), (b), 110 Stat. 3009-594 to -597; *St. Cyr*, 533 U.S. at 297.

However, in 2001 the Supreme Court decided that § 212(c) relief remains available for aliens who pled guilty prior to AEDPA and/or IIRIRA and who "would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." *St. Cyr*, 533 U.S. at 326. In August 2002, the Department of Justice ("DOJ") published proposed amendments to its regulations that were meant to codify the requirements for former § 212(c) relief in the wake of AEDPA, IIRIRA, and *St. Cyr*. 67 Fed. Reg. 52627 (August 13, 2002). The DOJ noted that, among other things, "an applicant must, at a minimum meet the criteria . . . [that he] is deportable or removable on a ground that has a corresponding ground of exclusion or inadmissibility." *Id*. at 52628-29. The final rule

---

[10]The "aggravated felony" deportation ground was created by the Anti-Drug Abuse Act of 1988 ("ADAA") and was defined narrowly to include murder, drug trafficking, and weapons trafficking. Pub. L. No. 100-690, §§ 7342, 7344, 102 Stat. 4181. Since that time, the number of offenses classified as aggravated felonies has exploded. *See, e.g.*, Immigration and Nationality Technical Corrections Act of 1994, Pub. L. No. 103-416, § 222, 108 Stat. 4305, 4320-22; IIRIRA, Pub. L. No. 104-208, § 321, 110 Stat. 3009-546, 3009-627 to -628.

was published on September 28, 2004. 8 C.F.R. § 1212.3(f)(5).

In 2005, the Board decided that an alien who was deportable for an aggravated felony "sexual abuse of a minor" conviction was ineligible for § 212(c) relief on the basis of the comparable grounds rule. *Blake*, 23 I. & N. Dec. at 723. The Board noted that the only ground of inadmissibility that was potentially comparable to the aggravated felony/sexual abuse of a minor ground of deportation was § 212(a)(2)(A)(i)(I) (rendering most aliens with CIMT convictions inadmissible). *Id.* at 723-28. The Board held that while the "coverage of the offenses described [by the deportation and exclusion provisions] need not be a perfect match in order to be 'statutory counterparts,' " *id.* at 729, "Congress [must have] employed similar language to describe substantially equivalent categories of offenses," *id.* Reasoning that because "the moral turpitude ground of exclusion addresses a . . . much broader category of offenses than the aggravated felony sexual abuse of a minor charge," *id.* at 728, the BIA held that Congress had not signaled an intention to treat the categories as essentially equivalent. In *Matter of Brieva*, 23 I. & N. Dec. at 770-73, the Board employed the same analysis to find that the aggravated felony "crime of violence" ground of deportability was incongruous with the CIMT ground of inadmissibility. The validity of the *Blake* and *Brieva* holdings are matters of first impression in this circuit.

## III.   ANALYSIS

### A.   Jurisdiction and Standard of Review

We have jurisdiction under 8 U.S.C. § 1252 to address the constitutional and legal questions presented in Abebe's petition. *See Morales-Alegria v. Gonzales*, 449 F.3d 1051, 1053 (9th Cir. 2006). We review *de novo* the BIA's determination of purely legal questions. *Simeonov v. Ashcroft*, 371 F.3d 532 (9th Cir. 2004). However, the principles of deference to

administrative agency decisions established in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 (1984), are applicable when a court reviews the BIA's interpretation of the Immigration and Nationality Act. *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999). Where, as here, a provision of the INA is subject to more than one interpretation, we ask only whether the BIA's interpretation is a reasonable one. *Vasquez-Lopez v. Ashcroft*, 343 F.3d 961, 969-70 (9th Cir. 2003).

Abebe argues that the *Blake* holding is not owed deference (1) because it raises serious constitutional concerns—both in terms of equal protection and retroactivity; and (2) because it conflicts with the statute, regulations, and prior caselaw. While it is true that an agency's construction of its governing statute must be rejected if it raises serious constitutional concerns and "a less constitutionally troubling construction is readily available," *Williams v. Babbit*, 115 F.3d 657, 666 (9th Cir. 1997), we address the non-constitutional issues first.

## B.   Non-Constitutional Issues

### 1.   Consistency with the Statute

[1] Abebe argues that *Blake* is inconsistent with the text of § 212(c) as it stood at the time of his guilty plea in 1992.

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily . . . and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) . . . *The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of at least 5 years.*

8 U.S.C. § 1182(c) (Supp. IV 1992) (emphasis added).

Abebe draws our attention to the final sentence which was added by IMMACT 90, Pub. L. No. 101-649, § 511(a), 104 Stat. 4978, 5052, and argues that by barring § 212(c) relief to a *subset* of aggravated felons (those who had served at least five years), Congress expressed an intent to render all other aggravated felons eligible for relief. This argument fails.

**[2]** At the time this sentence was added, BIA and court precedent had for many years indicated that § 212(c) relief was available only to those aliens charged as deportable on a ground comparable to a ground of exclusion. *See Matter of T —*, 5 I. & N. Dec. at 389-90; *Matter of Granados*, 16 I. & N. Dec. at 728; *Matter of Wadud*, 19 I. & N. Dec. 182; *Cabasug*, 847 F.2d at 1326 (holding § 212(c) relief unavailable unless the ground of deportation was "substantially identical in the exclusion and deportation statutes"). Congress is presumed to be familiar with the background of existing law when it legislates, *Cannon v. Univ. of Chicago*, 441 U.S. 677, 699 (1979), and therefore knew that some aggravated felons would fail to qualify for § 212(c) relief altogether. By its amendment, Congress clearly intended to *further limit* § 212(c) relief rather than to expand its availability. "If Congress intended to overturn the practice requiring comparability, it could have done so explicitly." *Vo*, 2007 WL 816522 at *7; *see also Campos v. INS*, 961 F.2d 309, 314 (1st Cir. 1992) (rejecting similar claim). Abebe has not shown that the Board's interpretation of the statute is impermissible.

### 2.  *Consistency With the Regulations*

Abebe also alleges that the *Blake* holding is inconsistent with 8 C.F.R. § 1212.3(f) which provides in relevant part,

> An application for relief under former section 212(c) of the Act shall be denied if

. . .

(4)    The alien [is] removable on the basis of . . . an aggravated felony, except as follows:

(i)    An alien whose . . . aggravated felon[y convictions] were entered pursuant to plea agreements made on or after November 29, 1990, but prior to April 24, 1996, is ineligible for section 212(c) relief only if he or she has served a [five year] . . . term of imprisonment . . . , and

(ii)    An alien is not ineligible for section 212(c) relief on account of an aggravated felony conviction entered pursuant to a plea agreement that was made before November 29, 1990.

8 C.F.R. § 1212.3(f) (2004).

**[3]** Abebe reasons that by specifying that an alien who pleaded guilty between November 29, 1990 and April 24, 1996 is ineligible *only if* he has served five years, subsection (f)(4)(i) implies that an alien in a similar situation but who served less than five years is eligible for relief. Abebe misreads the regulation. On a much more plausible reading, an alien who pleaded guilty during this time frame is stripped of § 212(c) eligibility *by the workings of 8 C.F.R. § 1212.3(f)(4)* only if he also served a five-year term. If an alien was ineligible for some other reason (say because he was not an LPR (8 C.F.R. § 1212.3(f)(1)) or was deportable on a ground lacking a comparable ground of exclusion (8 C.F.R. § 1212.3(f)(5)), then it would make no difference whether or not he served five years.

**[4]** Abebe's argument that *Blake* conflicts with 8 C.F.R. § 1212(f)(4)(ii) is similarly unpersuasive. That provision was added in response to this court's decision in *Toia v. Fasano*, 334 F.3d 917 (9th Cir. 2003), which held that IMMACT 90's

amendment to § 212(c) (stripping eligibility from aggravated felons who served five years) could not be applied retroactively to aliens who pleaded guilty prior to its enactment. 69 Fed. Reg. 57830-31 (September 28, 2004). The Department of Justice acquiesced in the result of *Toia* and promulgated subsection (f)(4)(ii) to make clear that such an alien would not be stripped of eligibility *as a result of IMMACT 90's amendment. Id.* The regulation in no way provides affirmative entitlement to relief to an alien who would have been ineligible *for some other reason* (for instance, if the ground of removability charged lacked a comparable ground of inadmissibility).

### 3. *Consistency With Prior Agency Practice*

Abebe also argues that the *Blake/Brieva* rule conflicts with past Board interpretations of the statutory counterpart requirement and is therefore "entitled to considerably less deference." *INS v. Cardoza-Fonesca*, 480 U.S. 421, 446 n.30 (1987). This contention deserves careful consideration. If it is true that the BIA consistently interpreted the comparable grounds test one way and then reversed course without adequate explanation, *Blake* might represent "an arbitrary and capricious change from agency practice," *Nat. Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005), unworthy of *Chevron* deference.

[5] However, Abebe's premise is false—the BIA has not recently changed course but rather has maintained a consistent position for many years. As noted above, § 212(c) has generally not been interpreted as a form of relief applicable to *all* grounds of deportability.[11] Rather, it has been said that "if a ground of deportation is also a ground of inadmissibility . . .

---

[11]As a lone exception, the BIA did interpret § 212(c) in this manner for a brief period in 1990 but the Attorney General reversed the Board's opinion in March 1991. *See Matter of Hernandez-Casillas*, 20 I. & N. Dec 262 (BIA 1990, Att'y Gen. 1991).

section 212(c) can be invoked in a deportation hearing." *Matter of Salmon*, 16 I. & N. Dec. 734 (BIA 1978). Abebe would have us believe that despite language comparing the *ground* of deportability charged with the *grounds* of excludability listed in § 212(a), the Board has, in practice, engaged in a subtly different sort of analysis. Namely, Abebe suggests that before *Blake*, the BIA compared the *specific conduct* rendering an alien deportable with the grounds of exclusion in § 212(a). It would follow, under this approach, that if an alien whose conduct—say engaging in the sexual abuse of a minor—would render him excludable for committing a CIMT, then § 212(c) would be available in deportation proceedings regardless of the ground of deportation alleged by the government.

Abebe asserts that *Matter of Granados* supports his position. In that case, the BIA denied § 212(c) relief because "[c]onviction for possession of a . . . sawed-off shotgun [(the ground of excludability under § 241(a)(14))] is not a specified section 212(a) ground of excludability, nor a crime involving moral turpitude that would render the respondent excludable under section 212(a)(9) of the Act." 16 I. & N. Dec. at 728. Petitioner seizes on the second half of this sentence and claims that whenever an alien's conduct could expose him to the CIMT ground of excludability, he is eligible for § 212(c) relief. We need not decide if this is an accurate statement of the BIA's position when *Granados* was decided, because it was clearly repudiated in 1984.

In *Matter of Wadud*, an alien was found deportable under § 241(a)(5) for an immigration document fraud conviction. 19 I. & N. Dec. at 184 n.2. Mr. Wadud sought § 212(c) relief on the theory that the conduct supporting his conviction, and hence his deportability under § 241(a)(5), involved moral turpitude and that he was therefore excludable under § 212(a)(9) (CIMT). The BIA soundly rejected this argument characterizing its statement in *Granados* as dicta. *Id.* at 185. More importantly, the BIA clarified that the appropriate test was

concerned only with the "*ground of deportability charged*," *id*. (emphasis added), and its equivalence with some specified ground of exclusion.

In *Matter of Meza*, decided after the ADAA introduced the aggravated felony provisions, the Board reiterated the basic rule that a § 212(c) "waiver is available in deportation proceedings only to those aliens who have been found deportable under a ground of deportability for which there is a comparable ground of excludability." 20 I. & N. Dec. at 258. In that case, the BIA reversed the denial of § 212(c) relief sought by an alien charged with deportability under a provision that defined "illicit trafficking in any controlled substance" as an "aggravated felony." *Id*. at 259. The IJ made the facile conclusion that because there was no "aggravated felony" ground of exclusion in § 212(a), § 212(c) relief was unavailable. *Id*. The board rejected the IJ's reasoning but did *not* reject a grounds-based approach. *Id*. Rather, it noted that the aggravated felony ground of deportability essentially incorporated by reference § 101(a)(43) of the Act which in turn "refers to several types or categories of offenses." *Id*. Because the specific category of aggravated felony at issue—drug trafficking offenses—was comparable to the drug trafficking ground of exclusion in § 212(a)(23), the Board found the alien eligible for § 212(c) relief. *Id*. Therefore, *Meza* does not support Abebe's position.

Abebe also points to *Matter of Rodriguez-Cortes*, 20 I. & N. Dec. 587 (BIA 1992). In that case, an alien was found deportable by an IJ both on aggravated felony and firearms grounds. *Id*. at 589. Because it was well settled that § 212(c) was unavailable for aliens facing deportation for firearms offenses, the IJ denied relief. *Id*. The BIA reversed the finding of deportability on the firearms charge and remanded. *Id*. at 591. The case does not address whether, on remand, the alien may have been ineligible for relief because the aggravated felony ground of deportation lacked an exclusion counterpart. In fact, there is no indication that the Board even considered the

comparable grounds issue. This is too slender a reed to support the view that the BIA endorsed a conduct-based approach, especially in the face of the substantial body of case law both before and after *Rodriguez-Cortes* squarely addressing the issue.

**[6]** In short, Abebe is unable to point to any published BIA case granting § 212(c) relief to an alien because his conduct constituted a CIMT even though he was charged with some other ground of deportability. Nor can he point to any federal court of appeals precedent establishing a conduct-based test for comparability. To the contrary, the Ninth Circuit cases that have addressed the issue have come out the other way. *See Komarenko*, 35 F.3d at 435.

**[7]** The comparable grounds test restated in *Blake* and *Brieva* is consistent with past administrative and judicial interpretations of the statute and does not represent a substantial unexplained shift in agency practice.

## C.   Equal Protection

**[8]** It is well established that all individuals in the United States—citizens and aliens alike—are protected by the Due Process Clause of the Constitution. It is equally well established that the Due Process Clause incorporates the guarantees of equal protection. *Komarenko*, 35 F.3d at 434. This court applies the rational basis test to federal immigration statutes distinguishing among groups of aliens. *Tapia-Acuna*, 640 F.2d at 225.

Abebe argues that *Blake* creates classes of aliens who are treated differently without any rational justification. Specifically, he argues that because the conduct underlying his deportability—the sexual abuse of a minor offense—could render him excludable under the CIMT inadmissibility provision, principles of equal protection require that he be given the same statutory waiver opportunity that would exist for an

alien being deported for a CIMT conviction. However, this court has already rejected a virtually identical claim in *Komarenko*. That case involved an alien who had been convicted of assault with a deadly weapon and was deportable under § 241(a)(2)(C) (firearms deportation ground). 35 F.3d at 434. Mr. Komarenko argued that the conduct underlying his conviction "could have rendered him excludable as an alien convicted of a [CIMT]" and that therefore his equal protection rights were violated when relief was denied on the basis of the comparable grounds test. *Id*. at 435. This court refused to "employ[ ] a factual approach" but instead examined the classes of persons created by the excludability and deportation provisions. *Id*.

*Komarenko* explicitly limited the constitutional holding in *Tapia-Acuna* to cases involving aliens facing deportation on a basis which "*is identical to a statutory ground for exclusion for which discretionary relief would be available.*" *Komarenko*, 35 F.3d at 434. *Tapia-Acuna* adopted the Second Circuit's *Francis* decision. *Francis* compared two classes of aliens. In one, an alien who became deportable, left the United States, returned, and was then deported *on a ground for which he could have been excluded upon his last re-entry*, would be eligible for § 212(c) relief under the *nunc pro tunc* procedure of *Matter of L—*. In the other class, an alien who became deportable but stayed in the United States would have no opportunity for relief. The *Francis* court perceived no rational basis for this distinction.

**[9]** Abebe faces deportation for committing an aggravated felony/sexual abuse of a minor offense. Had he left the United States and returned after his conviction, he could not have been excluded on a "sexual abuse of a minor" theory because no such ground of inadmissibility exists. It is simply beside the point that the government *could have* sought to exclude him on the CIMT ground. All that *Francis* and *Tapia-Acuna* require is that the government give the same benefit (the waiver of a particular ground of inadmissibility) to aliens

whether or not they depart the United States. *Komarenko* establishes that "the linchpin of the equal protection analysis in this context is that the [deportation and exclusion] provisions be substantially identical." 35 F.3d at 435. As noted above, the aggravated felony/sexual abuse of a minor ground under which Abebe was found deportable is not substantially identical to the CIMT ground of exclusion. *Komarenko* therefore settles the issue.[12]

## D.   Due Process and Retroactivity

Abebe argues that *Blake* and *Brieva* represent new rules that may not be applied retroactively to upset the settled expectations of LPRs who became deportable under the old regime. Whether we apply the framework of analysis in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994) or *Montgomery Ward & Co. v. FTC*, 691 F.2d 1322 (9th Cir. 1982), Abebe's argument fails for the simple reason that *Blake* and *Brieva* do not represent a change in the law. As discussed extensively *supra* in Section III.B.3, the BIA's published

---

[12]Amici curiae argue that *Komarenko*'s analysis is no longer good law because it rested on the *Fleuti* doctrine, which allowed some LPRs to bypass the excludability provisions if they were returning from innocent, casual and brief trips abroad. *See* note 6, *supra*. According to amici, the *Komarenko* court's rejection of a conduct-based analysis was essentially prudential because the court did not wish to speculate as to whether Mr. Komarenko would have been deemed to be seeking entry if he took a hypothetical trip abroad following his assault conviction. Although creative, this argument is unconvincing. Neither *Komarenko*, nor the cases on which it relies—*Tapia-Acuna* and *Cabasug*—mention the *Fleuti* doctrine. Instead, *Komarenko* rejected the alien's framing of the question as whether he "*could have been* excluded under the moral turpitude provision" because doing so would require "extend[ing] discretionary review to every ground for deportation that could constitute . . . moral turpitude." 35 F.3d at 435. The absence of the *Fleuti* doctrine does not erase this concern. Further, amici simply assert that the *Fleuti* doctrine has been superseded by IIRIRA's amendments to the definition of "admission" in INA § 101(a)(13). Although the BIA agrees with this contention, *Matter of Collado-Munoz*, 21 I. & N. Dec. 1061, 1063-67 (BIA 1998), this court has not yet addressed the issue.

cases and this court's decisions considering the issue have consistently held § 212(c) relief to be unavailable to aliens deportable on grounds that lack comparable grounds of exclusion whether or not their conduct could also be characterized as involving moral turpitude. Since at least the 1970s an alien in Abebe's position would not have had any reasonable expectation of § 212(c) relief. There simply is no retroactivity problem because there is no new law. *Valere*, 473 F.3d at 761; *Vo*, 482 F.3d at ___, 2007 WL 816522 at *6-7.

## IV. CONCLUSION

Provisions authorizing discretionary relief from exclusion have traveled a long way from their original textual and functional starting points. Because the constitution does not require us to go further afield, we decline to do so. To the extent it challenges the BIA's disallowance of former § 212(c) relief, Abebe's petition for review is denied. For the reasons stated in the separate memorandum disposition filed concurrently with this opinion we remand for further proceedings regarding the withholding of removal claim.

Petition DENIED in part, REMANDED in part.

---

BERZON, Circuit Judge, concurring:

I write separately because I would decide this case differently than does the majority were I not constrained by *Komarenko v. INS*, 35 F.3d 432 (9th Cir. 1994). *Komarenko*, in my view, was wrongly decided, in large part for the reasons that the Second Circuit recently explained in a thorough analysis of the equal protection issue underlying this case. *See Blake v. Carbone*, ___ F.3d ___, No. 05-2988-AG(L), 2007 WL 1574760 (2d Cir. June 1, 2007). But for *Komarenko*, I would decide this case as the Second Circuit decided *Blake*.[1]

---

[1]Incidentally, *Blake* reversed the very Board of Immigration Appeals ("BIA") precedential opinion to which the majority in this case defers. *See Matter of Blake*, 23 I. & N. Dec. 722 (BIA 2005).

Yet, I cannot fault the majority for relying on *Komarenko* in its equal protection analysis, and I therefore concur in all but Part C of the majority opinion, and in the result — denying the petition.[2]

## I.

As *Blake* explains, the equal protection analysis in *Francis v. INS*, 532 F.2d 268 (2d Cir. 1976), adopted by this court in *Tapia-Acuna v. INS*, 640 F.2d 223 (9th Cir. 1981), and by the BIA in *Matter of Silva*, 16 I. & N. Dec. 26 (BIA 1976), mandates an *offense*-specific solution rather than the *ground*-specific analysis that the BIA has adopted and that the majority opinion today upholds.[3] In other words, to solve the *Francis* problem, we should ask simply whether a deportable alien would also have been excludable for the *offense* that rendered him deportable, regardless of the statutory *ground* under which that offense falls.

As the majority quite correctly describes, however, *see ante*, at 8121-22, *Komarenko* held, to the contrary — viz., that

[2]But for *Komarenko*, I might well consider deciding the statutory and regulatory issues as well differently than does the majority. Where there is a substantial constitutional issue — as there surely would be in this case but for *Komarenko* — there is no need to defer to agency decisions on statutory and regulatory issues that, if decided in favor of the party raising constitutional claims, would avoid the need to reach the constitutional issue raised. *See Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council,* 485 U.S. 568, 575 (1988). With *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984) thus inapplicable, the statutory and regulatory issues we decide might very well come out differently than they do.

[3]I use the term "ground" to refer to the categories of offenses, e.g., aggravated felonies, that are listed by name in the Immigration and Nationality Act ("INA") as reasons to deport or exclude an alien. "Offenses" — the specific crimes that aliens commit or for which they are convicted — are not listed by name in the INA. Rather, "offenses" can make an alien deportable or excludable if the offenses fall under a *ground* of deportation or excludability.

for deportable aliens, the "linchpin" of § 212(c) availability is not the nature of the alien's offense but rather the similarity between the statutory text of a "ground" for exclusion and a "ground" for deportation. *See Komarenko*, 35 F.3d at 435. I fundamentally disagree with this approach, as did the Second Circuit in *Blake*. Indeed, rather than fully addressing the equal protection problem identified in *Francis* and *Tapia-Acuna*, *Komarenko*'s ground-specific analysis simply creates new arbitrary distinctions between similarly situated aliens.

## A.

We held in *Tapia-Acuna,* adopting the Second Circuit's analysis in *Francis*, that under the equal protection guarantee implicit in the due process clause of the Fifth Amendment, "eligibility for [§ 212(c)] relief cannot constitutionally be denied to an otherwise eligible alien who is deportable under § 1251(a)(11) [regarding drug offenses] whether or not the alien has departed from and returned to the United States after the conviction giving rise to deportability." 640 F.2d at 225. Our concern was that "[a]s noted in *Francis*, no purpose would be served by giving less consideration to the alien whose ties with this country are so strong that he has never departed after his initial entry than to the alien who may leave and return from time to time." *Id.* (quotation marks omitted).

The BIA had earlier acquiesced in *Francis,* except in the Ninth Circuit. *See Tapia-Acuna,* 640 F.2d at 224-25; *Matter of Silva*, 16 I. & N. Dec. 26 (BIA 1976). At that point, "the difficult task became one of implementation. How to decide whether a deportee was 'similarly situated' to an excludee?" *Blake*, 2007 WL 1574760, at *5. As the majority properly concludes, even before *Matter of Blake*, the BIA "consistently held that relief is available only for aliens facing deportation on a ground with some tight connection to a ground of excludability that could have been waived under § 212(c) had the alien traveled abroad." *Ante* at 8112. In this circuit, *Komarenko* followed suit, as a matter of constitutional law.

*Komarenko*'s constitutionally based analysis did, however, differ from the more practical analysis of the BIA. The BIA turned to a ground-specific approach because it was concerned that not all crimes that triggered deportability also triggered excludability. As a result, an offense-specific approach would produce the strange result of allowing some aliens with more severe criminal convictions access to relief not available to aliens convicted of less serious crimes. *See Matter of Wadud*, 19 I. & N. Dec. 182, 185 (BIA 1984); *cf. Cabasug v. INS*, 847 F.2d 1321, 1326-27 (9th Cir. 1988) (rejecting a similar argument). The Attorney General additionally suggested that such an approach was necessary to stay as true to the text of § 212(c) as possible. *Matter of Hernandez-Casillas*, 20 I. & N. Dec. 262, 287-88 (BIA 1990; AG 1991).

*Komarenko*, on the other hand, concluded that for crimes that fall under different grounds of deportation and exclusion, the distinction between a deportable alien who travels and one who does not is not arbitrary — even if both aliens would also be excludable and eligible for § 212(c) relief upon reentering the country. 35 F.3d at 435. *Komarenko* furthermore "decline[d] to speculate whether the [Immigration and Nationality Service] would have applied [the crimes involving moral turpitude] excludability provision to an alien in Komarenko's position" due to concerns about the scope of the court's authority. *Id.* We reasoned that if we analyzed Komarenko's offense to determine whether it triggered excludability as well as deportability, we would have to review far more deportation orders in order to determine whether the offenses properly qualified as crimes involving moral turpitude. *Id.* "Such judicial legislating would vastly overstep 'our limited scope of judicial inquiry into immigration legislation,' and would interfere with the broad enforcement powers Congress has delegated to the Attorney General, *see* 8 U.S.C. § 1103(a)." *Id.* (citations omitted) (quoting *Fiallo v. Bell*, 430 U.S. 787, 792 (1977)).[4]

---

[4]To the extent that *Komarenko* is concerned with the propriety of the court's determination in the first instance of what constitutes a crime

These analytical differences aside, however, the practical effects of the BIA's approach and this court's approach in *Komarenko* have been virtually the same: the comparable grounds standard has meant that § 212(c) relief is available only to aliens whose offenses fall under grounds of deportation that — as a matter of statutory text — are described with similar language as or largely overlap with categories of excludable offenses.

## B.

As the Second Circuit explained, the BIA's — and our — "emphasis on similar language is strange" given the context, *Blake,* at *11:

> The touchstone in *Francis* was the irrelevant and fortuitous circumstance of traveling abroad recently; the decision did not consider whether equal protection requires that all or even most offenses falling under a particular ground of deportation must also fall under the counterpart ground of exclusion. In short, eligibility for relief in *Francis* turned on whether the lawful permanent resident's offense could trigger § 212(c) were he in exclusion proceedings, not how his offense was categorized as a ground of deportation.

involving moral turpitude, it is at least arguable that *Komarenko* applies only to cases in which it is not clearly established that the alien's crime constitutes a crime involving moral turpitude, or some other excludable offense. I nevertheless concur in the majority opinion because I believe its reading of *Komarenko* as not so limited is the better one. In addition to discussing the proper role of this court, *Komarenko* rests on an equal protection analysis that holds distinctions among classes of aliens who have committed the same crime not arbitrary if based on differing statutory categories. 35 F.3d at 435. While I disagree with that holding, it is fully applicable here and sufficient to resolve the equal protection issue.

*Id.* at \*11 (citations and quotation marks omitted). In other words, "what makes one alien similarly situated to another is his or her *act or offense*," not the grounds the government chooses to use to deport the aliens. *Id.* at \*13 (emphasis added). Accordingly, the Second Circuit reached what in my view is the only permissible result after *Francis* and *Tapia-Acuna*: "[E]ach petitioner, a deportable lawful permanent resident with an aggravated felony conviction, is eligible for a § 212(c) waiver if his or her particular aggravated felony offense could form the basis of exclusion." *Id.* at \*13. And this is the only permissible result even if one is not sure that *Francis* and *Tapia-Acuna* are analytically correct. *See Blake,* 2007 WL 1574760 at \* 14 ("*Francis* expanded the sweep of § 212(c); Congress's only response was to limit and then repeal the statute; and the task of reconciliation unfortunately fell on the BIA. While hindsight might pin much of this confusion on *Francis*, we are bound to finish what our predecessors started.").

*Komarenko*'s alternative approach — based on grounds of deportation rather than offenses — is troublesome not only because it imperfectly solves the *Francis* problem, but also because it creates new problems. *Francis* and *Tapia-Acuna* identified as arbitrary — and thus unconstitutional — the distinction between deportable aliens who were alike except that one had left the United States temporarily and was trying to return, and the other had not. The comparable grounds test has made the availability of § 212(c) relief turn on an equally arbitrary distinction, between two groups of deportable aliens who would *both* have been excludable had they sought to return after leaving. Under this test, alien A who is deportable and excludable because he committed assault with a deadly weapon is not eligible for relief from deportation because his offense falls into a category of deportable offenses — "aggravated felonies" — that is different from the relevant category of excludable offenses — crimes involving moral turpitude — even though he would, in fact, have been eligible for relief had he been intercepted at the border. *See Komarenko*, 35

F.3d at 435. On the other hand, alien B who is deportable because he committed a drug offense is eligible for relief simply because drug offenses were described with similar *words* in the deportation and exclusion statutes. *See Tapia-Acuna*, 640 F.3d at 224-25. No rational purpose can be served by this distinction. Although important policy considerations inform decisions about which *offenses* trigger deportability and excludability, the size, scope, and overlap of *categories* of deportable offenses and *categories* of excludable offenses reflect no rational judgment about which individuals deserve to stay in or enter the country. *See generally Blake,* at *11 n.10 (noting that making § 212(c) relief depend on the "incidental overlap" between categories of excludable and deportable offenses "is exactly the sort of standard that invites arbitrary decision-making. How would the BIA determine how much overlap suffices? Would more than half the offenses underlying a ground of deportation have to fit within a particular ground of exclusion? Or would 33.333% do?").

Moreover, there is an additional anomaly that the *Blake* court did not mention: The comparable grounds test is strangely at odds with how § 212(c) relief operates once it is granted.

The BIA has consistently held that when an alien receives a waiver of excludability under § 212(c) or other waiver provisions, that alien can no longer be excluded or deported solely due to the offense that made him excludable — even if there is a category of deportable crimes that applies to his offense and that is different from the category that permitted the waiver. *See Matter of Balderas*, 20 I. & N. Dec. 389, 392 (BIA 1991); *Matter of Gordon,* 20 I. & N. Dec. 52, 56 (BIA 1989); *Matter of Mascorro-Perales*, 12 I. & N. Dec. 228, 229-32 (BIA 1967); *Matter of G— A—*, 7 I. & N. Dec. 274, 275-76 (BIA 1956); *see generally Molina-Amezcua v. INS*, 6 F.3d 646, 647-48 (9th Cir. 1993) (per curiam).[5] So, in other words,

---

[5]By the same token, a § 212(c) waiver does not extend to later crimes committed by the same alien, even if they fall within the same category of offenses for which the alien received the earlier waiver. *See Balderas*, 20 I. & N. Dec. at 393.

relief under § 212(c) is itself offense-specific, *not* ground-specific, and the BIA is thus entirely inconsistent in its application of ground-specific and offense-specific analysis.

The result of this anomaly is, once again, inexplicable distinctions in the treatment of similarly situated individuals: As between two individuals who would be deported for the same aggravated felony, alien C who had received a waiver at the border for that offense is insulated from deportation for the offense on *any* ground, including on the aggravated felony ground that did not give rise to the waiver; alien D, who remained here, is deportable as an aggravated felony because of the categorical mismatch. In other words, the categorical approach is applied to one but not the other, resulting in an arbitrary distinction.

## II.

There is an additional reason I would reconsider *Komarenko*, aside from the considerations that it cannot be reconciled with *Tapia-Acuna* and creates additional irrational classifications: Although the Supreme Court has not directly addressed the issue in this case, it has assumed a premise consistent only with the offense-specific approach of the Second Circuit.

*INS v. St. Cyr*, 533 U.S. 289 (2001) observed that "[t]he extension of § 212(c) relief to the deportation context has had great practical importance, because deportable offenses have historically been defined broadly." *Id.* at 295. As an example of the crimes that could be waived under § 212(c), the Court cited a particularly large and growing category of deportable offenses: aggravated felonies. *Id.* at 295 & n.4. Yet, it is precisely this category of offenses that *Matter of Blake* and *Komarenko* are most likely to render unwaivable.

Aggravated felonies will most often fail the comparable grounds test. Although the category includes numerous crimes

for which an arriving alien could be excluded, the term "aggravated felony" never appears as a ground for exclusion. Furthermore, the category of aggravated felonies, as well as the subcategories enumerated in the statute, *see* 8 U.S.C. 1101(a)(43), imprecisely overlap with the most similar category of excludable offenses: crimes involving moral turpitude. *See Blake*, 23 I. & N. Dec. at 727-28 & n.3. *But see Matter of Meza*, 20 I. & N. Dec. 257, 259 (BIA 1991) (concluding that one set of aggravated felonies — drug trafficking crimes — satisfy the comparable grounds test because those crimes fell under a subset of aggravated felonies that was enumerated in statute and which would be mostly "encompassed within the scope of" a category of excludable offenses).[6]

As the Supreme Court observed six years ago, the availability of § 212(c) relief has had a profound impact on resident aliens who face deportation. *St. Cyr*, 533 U.S. at 295. Despite its unavailability under current law, § 212(c) continues to provide a vital lifeline for qualifying aliens. In reducing the availability of § 212(c) relief, *Matter of Blake* severely, unnecessarily, and unconstitutionally distorts the law of § 212(c) as the executive branch has practiced it and as we — with the unfortunate exception of *Komarenko* — have interpreted it.

In short, were I not bound by *Komarenko*, I would adopt

---

[6]This case involves an aggravated felony that is identified in the statute as a subcategory of aggravated felonies. 8 U.S.C. § 1101(a)(43)(A) (defining sexual abuse of a minor as an aggravated felony). There is no ground of excludability that is as narrowly defined as this subcategory of aggravated felonies. Furthermore, as the BIA noted, the subcategory of aggravated felonies that includes sexual abuse crimes includes offenses that could never serve as the basis for exclusion. *Blake*, 23 I. & N. Dec. at 727-28 & n.3. Neither the majority opinion nor the BIA opinion has addressed the application of *Komarenko* and the comparable grounds test to situations in which the subcategory of aggravated felonies into which an alien's deportable offense falls is *entirely* subsumed by a category of excludable offenses.

the Second Circuit's analysis in *Blake* and remand for consideration of whether Abebe is otherwise eligible and, if so, whether he should receive a grant of § 212(c) relief as a matter of discretion. Because *Komarenko* is the law of our circuit, I concur in the majority opinion except for Part C, and in the denial of the petition.