# In the
# United States Court of Appeals
## For the Seventh Circuit
―――――――――

Nos. 06-3717, 06-3841, 06-3979, 07-1199 & 07-1670

ERNESTO ZAMORA-MALLARI,
GERARDO MEDINA-MUNOZ,
and JOSE L. BARRAZA-IBARRA,

*Petitioners*,

*v.*

MICHAEL B. MUKASEY, Attorney General
of the United States,                    *Respondent.*

―――――――――

Petitions for Review of Orders of the
Board of Immigration Appeals.
Agency Nos. A43-221-786, A90-312-769 & A90-942-606

―――――――――

ARGUED SEPTEMBER 6, 2007—DECIDED JANUARY 24, 2008

―――――――――

Before FLAUM, MANION, and KANNE, *Circuit Judges.*

MANION, *Circuit Judge.*    This opinion resolves three separate appeals challenging orders of the Board of Immigration Appeals ("Board"). The petitioners, Ernesto Zamora-Mallari ("Mallari"), Gerardo Medina-Munoz ("Munoz"), and Jose Luis Barraza-Ibarra ("Ibarra"), all sought waivers of removability under §212(c) of the Immigration and Nationality Act ("INA"). The Board denied their requests for §212(c) waivers, as well as

other motions brought by the petitioners. The petitioners appeal. We deny the petitions for review.

## I.

### A.  Petitioner Mallari

In 1991, Mallari, a citizen of the Philippines, entered the United States on an immigrant visa as an unmarried son of a United States citizen. Less than three years later, Mallari was indicted in Illinois state court on charges of criminal sexual abuse, aggravated criminal sexual abuse, and sexual exploitation of a child. In 1995, Mallari pleaded guilty to criminal sexual abuse and was sentenced to one year probation and community service.

In September 1999, the government served Mallari with a Notice to Appear ("NTA") in immigration court, charging him with removal as an alien convicted of criminal sexual abuse, an aggravated felony. Mallari requested a waiver from removal under § 212(c). An Immigration Judge ("IJ") denied Mallari's request and ordered him removed to the Philippines; the IJ concluded that Mallari was not eligible for a § 212(c) waiver because at the time of his guilty plea he lacked seven years of lawful domicile, as required by statute. Mallari appealed to the Board, arguing that he should have been permitted to present his application for § 212(c) relief. The government moved to remand Mallari's case to allow him to apply for § 212(c) relief. The Board agreed that remand was appropriate, noting that Mallari now possessed the seven years residency required for a § 212(c) waiver. Accordingly, the Board remanded the case to the IJ "for further proceedings consistent with this opinion."

On remand to the IJ, Mallari submitted numerous documents in support of his § 212(c) waiver application. The government, however, responded that Mallari was not eligible for the requested relief based on the Board's recent decision in *Matter of Blake*, 23 I & N Dec. 722 (BIA 2005). In *Blake*, the Board held that aliens charged with deportability for having committed the aggravated felony of sexual abuse of a minor are ineligible for relief under § 212(c) because there is no ground of inadmissibility corresponding to that ground of deportability. The IJ denied Mallari's request for § 212(c) relief and Mallari again appealed to the Board.

On July 20, 2006, in lieu of a brief, Mallari filed a motion to remand, seeking to pursue adjustment of status on the basis of an approved relative visa petition filed by his adult son who is a citizen of the United States. The government opposed Mallari's motion to remand. On September 21, 2006, the Board dismissed Mallari's appeal, concluding that Mallari was ineligible for a waiver under § 212(c). The Board further concluded that while Mallari might be eligible for an adjustment of status on the basis of a relative visa petition, he had failed to establish any discretionary considerations favoring remand and therefore he had not met his heavy burden of proving that reopening the proceedings was warranted. Mallari appeals.

## B.  Petitioner Munoz

Munoz, a citizen of Mexico, was admitted into the United States as a lawful permanent resident on October 27, 1989. In 1990, Munoz pleaded guilty in Illinois state court to the crime of aggravated criminal sexual abuse of a minor. Munoz was sentenced to probation for four years, but he

violated his probation order by returning to Mexico. Following Munoz's probation violation, the Illinois state court sentenced him to three years of imprisonment.

Based on his conviction, the government served Munoz with an NTA in immigration court, charging him with removal as an alien convicted of sexual abuse of a minor, an aggravated felony. In May 2005, an IJ determined that Munoz was removable, and that he was not entitled to a § 212(c) waiver of removability. Munoz appealed to the Board. In September 2006, the Board dismissed his appeal, holding that Munoz was not entitled to a § 212(c) waiver. Munoz filed an appeal with this court.

The day before oral argument, Munoz filed an Emergency Motion to Hold Petition for Review in Abeyance to allow the Board to adjudicate a motion to reopen he had filed one week earlier with the Board. The motion to hold in abeyance is now also before this court. In support of his motion, Munoz attested that on August 28, 2007, he filed a Motion to Reopen his immigration case with the Board, seeking adjustment of status as the spouse of a United States citizen. The government objected to Munoz's request to hold this appeal in abeyance, noting that proceeding with Munoz's appeal would have no effect on Munoz's motion to reopen. Given that Munoz's appeal was fully briefed and argued, and that we are considering a purely legal question, there is no reason to further delay adjudication of the issue presented on appeal. Accordingly, we deny Munoz's Motion to Hold Petition for Review in Abeyance.

## C. Petitioner Ibarra

In 1981, Ibarra, a citizen of Mexico, "entered the United States at or near El Paso, Texas . . . without being admitted

or paroled into the United States." IJ Decision at 2. However, he later became a lawful permanent resident on May 18, 1990. Less than one month later, Ibarra pleaded guilty in Illinois state court to two counts of aggravated criminal sexual assault "based on his sexual penetration of a child under the age of 13."

On May 4, 1999, the Immigration and Naturalization Service "INS" (now the Department of Homeland Security, "DHS") served Ibarra with an NTA. The NTA charged Ibarra with removability from the United States as an alien convicted of criminal sexual assault, an aggravated felony. An IJ ordered Ibarra deported to Mexico, determining that he was statutorily ineligible for a § 212(c) waiver. Ibarra appealed to the Board. While his appeal was pending, the Supreme Court decided *INS v. St. Cyr*, 533 U.S. 289 (2001). In *St. Cyr*, the Supreme Court held that aliens whose criminal convictions were obtained through plea agreements, and who would have been eligible for § 212(c) relief at the time of their pleas, remained eligible for § 212(c) relief notwithstanding the fact that § 212(c) had been repealed prior to the initiation of their removal proceedings. *Id.* at 326. Based on *St. Cyr*, the Board remanded Ibarra's case to the INS to allow Ibarra to apply for § 212(c) relief. On remand, an IJ determined that Ibarra was not eligible for a § 212(c) waiver based on the offense for which he was found removable. Ibarra appealed to the Board. The Board dismissed Ibarra's appeal, agreeing with the IJ that Ibarra was not entitled to § 212(c) relief. Ibarra appealed to this court.

While his appeal was pending before this court, Ibarra filed a motion to reopen his case to present an application for adjustment of status based on his marriage to a United States citizen and his wife's approved visa petition. The

Board denied Ibarra's motion to reopen and Ibarra appealed that decision to this court. He also filed a motion to reconsider both the Board's denial of his request for § 212(c) relief and its denial of his motion to reopen. The Board denied Ibarra's motion to reconsider and Ibarra appeals from that denial as well.

## II.

On appeal, all three petitioners argue that they are entitled to seek a waiver from removability pursuant to § 212(c). Mallari and Ibarra also present other issues related solely to their individual cases. We address the § 212(c) issue first, as to all petitioners, and then consider the additional issues on appeal.

### A.  Section 212(c)

Historically, the government could remove a lawful permanent resident from the United States by either deporting them after entry under § 241 (now § 237) of the INA, 8 U.S.C. § 1227, or by excluding them upon reentry under § 212 of the INA, 8 U.S.C. § 1182(a). Currently, there are forty-six grounds of exclusion, 8 U.S.C. § 1182, and thirty-three grounds of deportation, 8 U.S.C. § 1227. *Blake v. Carbone*, 489 F.3d 88, 94 (2d Cir. 2007). While there is some overlap, not every act that renders someone deportable makes him excludable, and vice versa. *Id.*

Until 1996, § 244 of the INA authorized the Attorney General, in his discretion, to suspend the deportation of a person who 1) maintained at least seven years of continuous physical presence in the United States (ten for certain deportable offenses) following the commission of

the deportable offense, 2) possessed "good moral charac-
ter," and 3) whose deportation would result in "extreme
hardship" ("exceptional and extremely unusual hard-
ship" for certain deportable offenses) "to the alien or to his
spouse, parent, or child, who is a citizen of the United
States or an alien lawfully admitted for permanent resi-
dence." 8 U.S.C. § 1254(a)(1) & (2) (repealed 1996). Simi-
larly, § 212(c) of the INA contained a waiver provision
for those subject to exclusion, providing the Attorney
General with discretion to waive exclusion (now known
as inadmissibility) for "[a]liens lawfully admitted for
permanent residence who temporarily proceeded abroad
voluntarily and not under an order of deportation, and
who are returning to a lawful unrelinquished domicile of
seven consecutive years . . . ." 8 U.S.C. § 1182(c) (repealed
1996).

By its terms, § 244 applied only to those in deportation
(now called removal) proceedings and § 212(c) applied
only to those in exclusion proceedings. *See* 8 U.S.C.
§ 1254(a); 8 U.S.C. § 1182(c). The disparity between the
statutes could lead to some strange outcomes. For instance,
if a lawful permanent resident left the country and upon
returning to the United States was placed in exclusion
proceedings, a § 212(c) waiver would be available. How-
ever, if the border officials failed to place the lawful
permanent resident in exclusion proceedings and in-
stead allowed reentry, and later the government instituted
deportation proceedings, a § 212(c) waiver would not
be available under the plain language of that statute.
While the latter individual could seek a § 244 waiver
from deportation, the requirements for a waiver under
that section were more stringent. Thus, a § 212(c) waiver
was more desirable. But because the returning lawful
permanent resident had been allowed reentry and was

not placed in removal proceedings, the text of § 212(c) limited such an individual to a § 244 waiver.

To address this quirk in the system, the Board for over sixty years considered § 212(c) waiver applications from "lawful permanent residents who commit[ed] an excludable offense in the United States, depart[ed] and return[ed] to the United States after commission of the offense, [and who] ha[d] not been put in exclusion proceedings upon return, but later end[ed] up in deportation proceedings." *See Blake,* 489 F.3d at 94. *See Matter of G-A-*, 7 I & N Dec. 274 (BIA 1956). In other words, since the Board's decision in *Matter of G-A*, the Board allowed certain individuals in deportation proceedings to obtain a waiver under a statutory provision, namely § 212(c), that by its terms did not apply.

Following the Board's decision in *Matter of G-A-*, a lawful permanent resident who had never left the United States sought a § 212(c) waiver from the Board. *See Matter of Arias-Uribe*, 13 I & N Dec. 696 (BIA 1971), *aff'd sub nom. Arias-Uribe v. INS*, 466 F.2d 1198 (9th Cir. 1972). The Board, while recognizing that it had already expanded the scope of § 212(c) beyond that authorized by Congress, refused to broaden § 212(c) even further so as to allow a waiver for those who never left the country. *Arias-Uribe*, 13 I & N Dec. at 698.

However, in 1976, the Second Circuit rejected the Board's position that a § 212(c) waiver was only available to those individuals who had actually departed and reentered the country. *Francis v. INS*, 532 F.2d 268 (2d Cir. 1976). In *Francis*, the INS charged the petitioner with deportability under § 241 of the INA based on his conviction for a narcotics offense. Francis sought a § 212(c) waiver, but the Board held that because Francis had never

left the United States and was being deported under § 241, and not being excluded under § 212(a), § 212(c) did not apply. Francis appealed to the Second Circuit, arguing that treating him differently than lawful permanent residents who had departed and returned to the United States violated the Equal Protection Clause of the Constitution. The Second Circuit agreed, holding that Congress lacked a rational justification for treating lawful permanent residents who had traveled abroad and then returned differently than those who had never left the country. *Id.* at 273. Rather than strike the statute, though, the Second Circuit held that the petitioner and others who "differed from excludable lawful permanent residents only in terms of a recent departure from the country" were entitled to seek a § 212(c) waiver. *See Blake*, 489 F.2d at 95 (explaining *Francis*).

The Solicitor General decided not to seek certiorari in *Francis*, and the Board then acquiesced to the Second Circuit's decision in *Francis* by following the mandate of *Francis* throughout the country, *see Matter of Silva*, 16 I & N Dec. 26 (BIA 1976), even though the Board was "not required to accept an adverse determination by one circuit court of appeals as binding throughout the United States." *State of Ga. Dep't. of Med. Assis. v. Bowen*, 846 F.2d 708, 710 (11th Cir. 1988). *See Valere v. Gonzales*, 473 F.3d 757, 760 (7th Cir. 2007) ("In *In Matter of Silva*, 16 I & N Dec. 26 (B.I.A. 1976), the B.I.A. adopted the Second Circuit's position."). Based on *Francis*, immigration courts throughout the country considered § 212(c) waiver requests from lawful permanent residents in deportation proceedings where the permanent resident aliens were similarly situated to those in exclusion proceedings. *See, e.g., Matter of Silva*, 16 I & N. Dec. 26. This court followed suit. *Leal-*

*Rodriguez v. INS,* 990 F.2d 939, 948-49 (7th Cir. 1993) (holding that based on *Francis*'s rationale a deportable alien may seek § 212(c) relief if the ground for deportation had a comparable ground of exclusion, but rejecting the petitioner's argument that all deportable aliens qualified for a § 212(c) waiver).

The Board, as early as the 1970's, began to apply a "comparable grounds" analysis to determine if a lawful permanent resident subject to deportation was similarly situated to someone in exclusion proceedings. *Valere*, 473 F.3d at 761. The Board adopted the "comparable grounds" test to account for the fact that a § 212(c) waiver was only available to aliens who were "excludable" under §212(a). Thus, an alien deportable under § 241 would be similarly situated to an excludable alien only if the statutory ground for removal had a statutory counterpart, i.e., a "comparable ground," in the enumerated grounds for excludability under § 212(a). *See id.* at 760. In other words, the Board concluded that an individual subject to removal is only allowed to seek a § 212(c) waiver if the ground for removal is also a statutory ground for exclusion. The Attorney General approved the "comparable grounds" analysis in 1991. *Matter of Hernandez-Casillas*, 20 I & N Dec. 262 (BIA 1990; A.G. 1991) (holding that § 212(c) is not available for a ground of deportability that is not also a waivable ground of excludability under § 212(a)).[1]

---

[1] The Attorney General's approval was pursuant to the authority "Congress has vested in the Attorney General . . . to decide legal questions arising under the immigration laws. *See* 8 U.S.C. § 1103(a). The Attorney General has delegated this function

(continued...)

The Board's adoption of the "comparable grounds" test, however, did not end the difficulties caused by applying a statutory standard beyond the text's scope. Rather, it created an entirely new issue, namely how to determine what was a "comparable" ground of excludability. One of the next significant issues the Board confronted concerned the handling of § 212(c) waiver requests made by individuals subject to deportation for being convicted of an aggravated felony. Section 241(a)(4)(B) of the INA provided for deportation for those convicted of aggravated felonies, whereas § 212(a) does not provide for exclusion of those convicted of aggravated felonies. The Board concluded that, rather than adopt an absolute bar to § 212(c) waivers for aggravated felons subject to deportation, it would look to the provision of the INA that defined the offense as an "aggravated felony" to determine if there was a comparable ground of excludability. *In re Meza*, 20 I & N Dec. 257 (BIA 1991). Accordingly, in *Meza*, the Board first looked to the INA to determine the underlying category of aggravated felony charged, which, in that case, was "any illicit trafficking in any controlled substance . . . including any drug trafficking crime." *Id.* The Board then looked to § 212(a) to determine if it provided a ground of excludability that compared to the underlying aggravated felony. The Board concluded that § 212(a)(23), which provided as a basis for exclusion that the conviction was for "a violation of, or conspiracy to violate, any

---

[1] (...continued)
to the Board; however, the Attorney General retains the authority to review final decisions of the BIA, either upon the Attorney General's initiative or by request. *See* 8 C.F.R. § 3.1(h)." *Farquharson v. U.S. Att'y. Gen.*, 246 F.3d 1317, 1323 n.7 (11th Cir. 2001).

law or regulation relating to the illicit possession or traffic in narcotic drugs . . . ." *see* 8 U.S.C. § 1182(a)(23), provided a comparable ground of excludability. Accordingly, the Board concluded that Meza could seek a § 212(c) waiver. *Id.*

The Board's decision in *Meza* left other questions unanswered—most significantly whether the Board (and courts) should look to the grounds for deportation stated in the NTA, as opposed to what the INS *could* have charged the alien with as a basis for excludability had the alien sought admission. The Ninth Circuit in *Komarenko v. INS*, 35 F.3d 432 (9th Cir. 1994), explored this question. In *Komarenko*, the petitioner was convicted of assault with a deadly weapon. Following his conviction, the INS began deportation proceedings, charging Komarenko with deportability based on being an alien convicted of a firearms charge. *Id.* at 434. After the Board held that Komarenko did not qualify for a § 212(c) waiver because there was no comparable ground for excludability, Komarenko filed a petition for review in the Ninth Circuit. Komarenko argued that the Board's ruling violated his equal protection and due process rights and that he was entitled to a § 212(c) waiver because "the factual basis for his conviction, assault with a deadly weapon, could have rendered him excludable as an alien convicted of a crime involving moral turpitude under § 212(a)(2) of the INA." *Id.* at 435. In other words, Komarenko argued that the court "must focus on the facts of his individual case and conclude that because he *could have been* excluded under the moral turpitude provision, he has been denied equal protection." *Id.* (emphasis in original). The Ninth Circuit rejected Komarenko's argument for several reasons. First, it refused "to speculate whether the I.N.S. would have applied this broad [moral turpitude] excludability

provision to an alien in Komarenko's position." *Id.* Second, the court believed that looking to what an alien could have been charged with as a basis for excludability, as opposed to what he was charged with, "would extend discretionary review to every ground for deportation that could constitute the essential elements of a crime involving moral turpitude." *Id.* The Ninth Circuit believed that "[s]uch judicial legislating would vastly overstep our limited scope of judicial inquiry into immigration legislation, and would interfere with the broad enforcement powers Congress has delegated to the Attorney General, *see* 8 U.S.C. § 1103(a)." *Id.* (internal quotations omitted). Third, the Ninth Circuit believed that Komarenko's proposed approach "would create an arbitrary distinction between aliens whose firearms convictions rise to the level of a crime of moral turpitude and those whose convictions do not, and then extend discretionary review only to those with the more serious convictions." *Id.* at 435 n.2. Accordingly, the Ninth Circuit held that the appropriate focus was on the charged ground for deportation and not on whether an alien could have been excluded under the moral turpitude provision. *See id.* 435. The Ninth Circuit then concluded that Komarenko did not qualify for a § 212(c) waiver, holding "that the deportation provision for aliens convicted for firearms charges and the exclusion provision for moral turpitude" are not substantially identical. *Id.* at 434.

While the circuits attempted to navigate the torrents of § 212(c), Congress began a series of amendments to the immigrations laws. First, in 1990, Congress amended § 212(c) so as to prevent the Attorney General from granting waivers to aggravated felons who had served five or more years in prison. *See* Immigration Act of 1990, Pub. L.

No. 101-649, § 511(a), 104 Stat. 4978, 5052 (1990). Then in 1996, Congress eliminated § 212(c) waivers entirely for lawful permanent residents convicted of an aggravated felony, *see* Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104-132, § 440(d), 110 Stat. 1214, 1277 (1996), and later that same year repealed § 212(c) entirely. *See* Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub.L. No. 104-208, 110 Stat. 3009-597 (1996).[2]

However, in *INS v. St. Cyr* the Supreme Court held there is

> nothing in IIRIRA unmistakably indicating that Congress considered the question whether to apply its repeal of § 212(c) retroactively to such aliens. We therefore hold that § 212(c) relief remains available for aliens, like respondent, whose convictions were ob-

---

[2]  As part of the broad structural changes to the IIRIRA, Congress "dropped the concept of 'excludability' and now uses the defined term of 'inadmissibility.' " *Xi v. U.S. I.N.S.*, 298 F.3d 832, 838 (9th Cir. 2002). The IIRIRA also eliminated some of the distinctions that had existed between "deportation" and "exclusion" proceedings and created a unified proceeding under § 240 called "removal proceedings." 8 U.S.C. § 1229a. Section 240(e)(2) of the INA then defines the term "removable" to mean an alien who is "deportable" or an alien who is "inadmissible." Congress also adopted § 240A(a), Cancellation of Removal, creating a waiver from removal whether the permanent resident was inadmissible under § 212(a) or deportable under § 237 (which replaced the predecessor deportation provision, § 241), but only for certain classes of aliens, excluding those convicted of aggravated felonies. 8 U.S.C. § 1229B.

tained through plea agreements and who, notwith-standing those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect.

533 U.S. 289, 326 (2001).

Following *St. Cyr*, the DHS promulgated a rule to implement *St. Cyr*, and at the same to time clarify the comparable grounds test. The DHS codified the compara-ble grounds test in 8 C.F.R. § 1212.3(f)(5), providing that "[a]n application for relief under former section 212(c) of the Act shall be denied if . . . [t]he alien is deportable under former section 241 of the Act or removable under section 237 of the Act on a ground which does not have a statutory counterpart in section 212 of the Act."

In 2005, the Board in *Blake*, 23 I & N Dec. 722, again applied the comparable grounds test, as recently codified in 8 C.F.R. § 1212.3(f)(5). In that case, the DHS charged Blake with deportability for having an aggravated felony conviction for sexual abuse of a minor. Blake sought a waiver of deportability under § 212(c). The Board held that Blake did not qualify for a § 212(c) waiver because there was no comparable ground of inadmissibility (i.e., excludability) under § 212(a). The Board in *Blake* also specifically rejected the petitioner's claim that the "crime of moral turpitude" ground for exclusion was the stat-utory counterpart. *Id.* at 729.

Numerous circuits, including this one, have followed the Board's approach in *Blake*. *See Valere v. Gonzales*, 473 F.3d 757, 762 (7th Cir. 2007) (holding that Board's decision denying Valere § 212(c) relief under the reasoning of *Blake* did not violate the Equal Protection clause because "there is no statutory counterpart in § 212(a) for his crime

of indecent assault of a minor," and therefore "Valere is not similarly situated to an inadmissible, returning alien who is eligible to apply for § 212(c) relief"); *Soriano v. Gonzales*, 489 F.3d 909, 909 (8th Cir. 2006) (holding that Soriano "was ineligible for a waiver of removability under Immigration and Nationality Act (INA) § 212(c) . . . because the ground for which he was found removable—the aggravated felony of sexual abuse of minor—does not have a statutory counterpart in the grounds of inadmissibility listed in INA § 212(a). . . ."); *Caroleo v. Gonzales*, 476 F.3d 158, 167-68 (3d Cir. 2007) (holding that Caroleo was not entitled to a § 212(c) waiver because Caroleo was charged with removability for a crime of violence and there is no statutory counterpart in § 212(a), and rejecting Caroleo's claim that the Board should look to the underlying crime of attempted murder and treat that as being a counterpart to § 212(a)'s crime of moral turpitude).

Recently, however, the Second Circuit overruled the Board's *Blake* decision. In *Blake v. Carbone*, 489 F.3d 88 (2d Cir. 2007), the four petitioners had all been charged with removability for various criminal offenses. Specifically, two of the petitioners had been convicted of murder, rape, and sexual abuse of a minor; one had a federal racketeering conviction; and the fourth was convicted of first degree manslaughter. The Board concluded that they were not eligible for § 212(c) waivers because there were no statutory counterparts to the grounds of removability. The petitioners appealed to the Second Circuit, arguing that the moral turpitude ground of excludability was the statutory counterpart because all aggravated felonies involved crimes of moral turpitude. Conversely, the government argued that the only question was whether the ground for deportability *relied upon* by the DHS had a comparable ground for exclusion. The Second Circuit

rejected both approaches, holding instead that the Board must determine whether each petitioner's "particular aggravated felony offense *could* form the basis of exclusion under § 212(a) as a crime of moral turpitude." *Id.* at 104 (emphasis added). In reaching this conclusion, *Blake* expressly "recognize[d] [its] holding [was] at odds with that reached by several other circuits." *Id.* at 103. The *Blake* court then explained its reason for rejecting these decisions, stating:

> Were we to approve of these other courts' formulaic approach—limiting ourselves only to the language in the relevant grounds of deportation and exclusion—we would be ignoring our precedent that requires us to examine the circumstances of the deportable alien, rather than the language Congress used to classify his or her status.

*Id.* at 104.

Since the Second Circuit's decision in *Blake*, two circuits have rejected *Blake*'s approach in published opinions, specifically, the Ninth Circuit in *Abebe v. Gonzales*, 493 F.3d 1092 (9th Cir. 2007), and most recently the Eighth Circuit in *Vue v. Gonzales*, 496 F.3d 858 (8th Cir. 2007).[3] In

---

[3] The Third Circuit has also rejected the Second Circuit's approach in *Blake*, albeit in an unpublished decision. *See Birkett v. Att'y Gen. of U.S.*, 2007 WL 3193530 (3d Cir. 2007). Also in an unpublished decision the Eleventh Circuit in *Palomino-Abad v. U.S. Att'y Gen.*, 229 Fed.Appx. 891 (11th Cir. 2007), remanded the case to the Board to allow the Board to reconsider its ruling in light of the Second Circuit's decision in *Blake*. In doing so, the Eleventh Circuit stated that it was not expressing any opinion about the petitioner's eligibility for a § 212 waiver. In

(continued...)

*Abebe*, the government commenced deportation proceedings against Abebe, charging that he was deportable because he had been convicted of sexual abuse of a minor, an aggravated felony. The Ninth Circuit, after explaining the history of the § 212(c) issue, reaffirmed its holding in *Komarenko,* that § 212(c) relief is only available in "cases involving aliens facing deportation on a basis which *'is identical to a statutory ground for exclusion* for which discretionary relief would be available.'" *Abebe*, 493 F.3d at 1104 (emphasis in original) (quoting *Komarenko*). In other words, the Ninth Circuit looked to the actual grounds on which an alien is found to be removable—not the possible grounds. *Id.*

Most recently, the Eighth Circuit in *Vue v. Gonzales*, 496 F.3d 858 (8th Cir. 2007), addressed the § 212(c) issue. After summarizing the history of the § 212(c) issue, the court ruled that since there was no statutory counterpart to

---

[3] (...continued)
*Gutierrez-Almazan v. Gonzales*, 491 F.3d 341 (7th Cir. 2007), the petitioner sought reversal of the Board's decision denying him § 212(c) relief because he had failed to file a timely petition. The Board had also ruled that even if Almazan's petition was timely, he was not entitled to relief under § 212(c) because he was convicted of sexual assault of a minor and there was no comparable ground for inadmissibility. This court did not reach the merits of the § 212(c) issue, even though *Valere* would control, and instead remanded, directing the Board to consider the petition. This court then added that on remand the Board "may wish to reconsider its prejudice ruling in light of the Second Circuit's decision in *Blake v. Carbone*, 489 F.3d 88 (2d Cir. 2007)." *Gutierrez-Almazan*, 491 F.3d at 344 n.1. *Gutierrez-Almazan*, however, did not take a position on the propriety of the Second Circuit's decision in *Blake*. *Id*.

Vue's aggravated felony (first degree assault), Vue was not entitled to a § 212(c) waiver. The *Vue* court also rejected the Second Circuit's decision in *Blake* as contrary to its own Eighth Circuit precedent and held that Vue was not entitled to a § 212(c) waiver even if his aggravated felony was also a crime of moral turpitude. *Id.* at 861.

Against this backdrop, we consider the petitioners' argument that they were entitled to seek § 212(c) waivers. Initially, the petitioners all argue that the Board impermissibly applied 8 C.F.R. § 1212.3(f)(5) and the Board's decision in *Blake* retroactively so as to deny them relief under § 212(c). Specifically, the petitioners argue that the Board erred in relying on *Blake* and 8 C.F.R. § 1212.3(f)(5) in holding that they were not eligible for § 212(c) waivers because *Blake* was decided after they pleaded guilty to sexual abuse of a minor and 8 C.F.R. § 1212.3(f)(5) was promulgated after their guilty pleas. However, neither *Blake* nor 8 C.F.R. § 1212.3(f)(5) established a new rule. Rather, since the 1970's, the Board has held that § 212(c) waivers for deportation cases were limited to situations where there was a comparable ground of excludability. *See Valere*, 473 F.3d at 762. Section 1212.3(f)(5) of the regulations also did not create a new rule of law, but merely codified the Board's case law. Similarly, the Board in *Blake* did not establish a new rule of law, but rather applied the previously well-established comparability standard in a different factual context.[4]

---

[4] The petitioners all maintain on appeal that if their case had been heard before *Blake* they would have qualified for § 212(c) relief. However, as just noted, *Blake* merely applied the comparable basis test to a new factual scenario. If one of these petition-

(continued...)

Therefore, *Blake* and 8 C.F.R. § 1212.3(f)(5) did not retroactively apply a new rule of law to the petitioners. *See Valere,* 473 F.3d at 761 (rejecting the argument that § 1212.3(f)(5) impaired petitioner's right to a § 212(c) waiver because he "never had any right to § 212(c) eligibility. . . . Section 1212.3(f)(5) is simply the agency's codification of this preexisting, judicially created rule"); *Vue,* 496 F.3d at 863 (stating that "8 C.F.R 1212.3(f)(5) merely codifies established law"); *see also Blake,* 489 F.3d at 98-99 (noting that "[t]he statutory counterpart rule does nothing more than crystallize the agency's preexisting body of law and therefore cannot have an impermissible retroactive effect").

In a somewhat related argument, the petitioners also claim that the government impermissibly retroactively denied them § 212(c) waivers for having committed an "aggravated felony" because at the time they pleaded guilty to sexual abuse, sexual abuse did not constitute an "aggravated felony." The petitioners point out that it was only after Congress passed IIRIRA that sexual abuse was defined as an "aggravated felony." However, in passing IIRIRA, Congress expressly provided "that the amended definition of 'aggravated felony' should be applied to any and all criminal violations committed by an alien after entry into the United States, regardless of whether they were committed before or after the amended definition went into affect." *Flores-Leon v. INS*, 272 F.3d 433, 439 (7th Cir. 2001).

---

[4] (...continued)

ers' cases had come before *Blake,* that case would be the "*Blake*" case that stood for the proposition that an alien convicted of sexual abuse of a minor does not qualify for a § 212(c) waiver because there is no comparable ground of excludability.

Moreover, as the Second Circuit explained in *Blake*, such claims of impermissible

> retroactivity by petitioners Blake and Singh are curious. Each pleaded guilty to a crime that was not a deportable offense when they entered their pleas. Blake pleaded guilty to sexual abuse of a minor in 1992 but did not become deportable until 1996, when IIRIRA amended the definition of an aggravated felony to include sexual abuse of a minor. *See* 8 U.S.C. § 1101(a)(43). Singh similarly pleaded guilty to murder in 1986 but did not become deportable until the passage of the AEDPA. To say Blake and Singh relied on the law in effect at the time of their guilty plea is illogical; neither would have been deportable at the time of their plea, making it impossible for them to even think they would need a § 212(c) waiver to stay in the country.

*Blake*, 489 F.3d at 99 n.8.

Similarly, in this case, because at the time the petitioners pleaded guilty to sexual abuse it was not a deportable offense, they could not have pleaded guilty in reliance on the availability of a § 212(c) waiver since they had no need for a waiver. The petitioners' real complaint is that they pleaded guilty to offenses that were not deportable at the time of their pleas. However, because Congress expressly made the new definition of "aggravated felony" retroactive, the petitioners cannot challenge the retroactivity of that definition. *See Flores-Leon*, 272 F.3d at 438-39 (holding that "Congress has clearly manifested an intent to apply the amended definition of 'aggravated felony' retroactively").

Next, the petitioners claim that the Board's decisions holding them ineligible for § 212(c) waivers violate the

Supreme Court's holding in *St. Cyr*. As explained above, in *St. Cyr* the Supreme Court held that § 212(c) relief remains available to aliens whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) waivers at the time of their pleas under the law then in effect. *St. Cyr*, 533 U.S. at 326. However, for *St. Cyr* to benefit the petitioners, the petitioners must show that at the time of their pleas they were entitled to § 212(c) relief. As explained above, since at least 1979 the government has denied § 212(c) waivers to those subject to deportability, absent a comparable ground in § 212(c). Thus, unless there is a comparable ground of inadmissibility under § 212(a), *St. Cyr* is inapplicable.

That then leads to petitioners' argument that because their convictions for sexual abuse of a minor are crimes of moral turpitude, they qualify for § 212(c) waivers, and therefore denying them the right to apply for such waivers violates *St. Cyr* and their equal protection rights. In support of their position, the petitioners rely on the Second Circuit's decision in *Blake*, overturning the Board's *Blake* decision. This court, however, rejected that argument in *Valere*, and we need a compelling reason to overturn circuit precedent, such as a Supreme Court mandate or a new statute. *Santos v. United States*, 461 F.3d 886, 891 (7th Cir. 2006).

The petitioners initially contend that *Valere* is not controlling because the petitioner in that case did "not directly challenge the [Board's] conclusion in *Blake* that the crime of sexual abuse of a minor has no statutory counterpart in § 212(a)." *See Valere*, 473 F.3d at 761. That argument, however, ignores the fact that *Valere* presented an equal protection argument that required this court to consider

the validity of *Blake* and the statutory counterpart test. Specifically, in *Valere*, the petitioner claimed "that application of the statutory counterpart requirement of § 1212.3(f)(5) violates his equal protection rights." *Id.* To address Valere's equal protection argument, this court needed to first determine if Valere was similarly situated to an inadmissible alien, and that determination rested on the validity of the statutory counterpart test and *Blake.* In *Valere*, this court held that § 1212.3(f)(5) was "simply the agency's codification of this preexisting judicially created [statutory counterpart] rule." *Id.* at 761. We further held that "[a]lthough the *Blake* decision marked the first time the [Board] applied the rule to the crime of sexual assault of a minor, the rule itself is not new." *Id.* This court then concluded that "Valere's crime of indecent assault of a minor—like Blake's crime of sexual abuse of a minor—had no statutory counterpart in § 212(a) at the time Valere pleaded guilty." *Id.* We further held that because there was "no statutory counterpart in § 212(a) for his crime of indecent assault of a minor, Valere is not similarly situated to an inadmissible, returning alien who is eligible to apply for § 212(c) relief." *Id*. at 762. Therefore Valere's equal protection challenge failed. *Id.* Thus, contrary to the petitioners' argument, *Valere* did consider the validity of the statutory counterpart test, as well as *Blake*'s holding that the crime of moral turpitude category did not qualify as a counterpart, and *Valere* controls.

The petitioners also claim that we should overturn our decision in *Valere* because it was based on the Board's decision in *Blake*, which the Second Circuit recently overturned. However, as the Second Circuit recognized in *Blake*, its holding conflicts with every other circuit that has

confronted the issue. *See Blake*, 489 F.3d at 103. *See, e.g., Avilez-Granados v. Gonzales*, 481 F.3d 869, 872 (5th Cir. 2007)[5]; *Caroleo v. Gonzales*, 476 F.3d 158, 168 (3d Cir. 2007); *Kim v. Gonzales*, 468 F.3d 58, 62 (1st Cir. 2006); *Komarenko v. INS*, 35 F.3d 432 (9th Cir. 1994). Since *Blake*, in published opinions, two circuits have reaffirmed their earlier holdings and rejected the Second Circuit's approach in *Blake*. *See Abebe v. Gonzales*, 493 F.3d 1092 (9th Cir. 2007); *Vue v. Gonzales*, 496 F.3d 858 (8th Cir. 2007). A third circuit has rejected *Blake* in an unpublished order. *See Birkett v. Attorney General of U.S.*, 2007 WL 3193530 (3d Cir. 2007). Thus, the weight of precedent supports our holding in *Valere*.

Additionally, we find the reasoning of the Ninth Circuit in *Komarenko*, as recently reaffirmed in *Abebe*, particularly persuasive. As the Ninth Circuit explained, if courts were to look beyond the charged grounds of deportation to the underlying criminal offense to determine whether the criminal offense *could* have been treated as a crime of moral turpitude, that would greatly expand the role Congress assigned the judiciary in immigration cases. That is especially true given that the precise meaning of the term "moral turpitude" is not clearly established. We also find the Fifth Circuit's reasoning in *Avilez-Granados*, 481 F.3d 869, persuasive. In that case, the alien was charged with removability for sexual abuse of a child. The peti-

---

[5] The Fifth Circuit in *Avilez-Granados* "note[d] that two companion cases, *Vo v. Gonzales*, 482 F.3d 363, and *Brieva-Perez v. Gonzales*, 482 F.3d 356 (5th Cir. 2007), were heard on the same day and contain related issues and overlapping reasoning."

tioner argued that there was a statutory counterpart in the crime of moral turpitude ground of inadmissibility. The Fifth Circuit rejected that argument, reasoning that "it is not enough that a crime could be reclassified. There is no textual link between sexual abuse of a child and crimes involving moral turpitude to indicate that Congress had the same class of offenses in mind when it enacted the two provisions that must be compared." *Id.* at 872.

Further, we reject the Second Circuit's reasoning in *Blake* that it is inappropriate to take a "formulaic approach" that limits the court "to the language in the relevant grounds of deportation and exclusion." *Id.* Rather, an approach that focuses on the ground that forms the actual basis for deportation is most appropriate given that the courts have already expanded the scope of § 212(c) beyond its expressed coverage. As the First Circuit observed, § 212(c) has already been "stretched beyond its language" in response to equal protection concerns." *See Campos v. INS*, 961 F.2d 309, 316 (1st Cir. 1992). Additional "judicial redrafting would serve only to pull the statute further from its moorings in the legislative will." *Farquharson*, 246 F.3d at 1325. Moreover, "further speculative tinkering by courts with a statute that says one thing but is supposed to mean another will likely as not result in even more confusion." *Campos*, 961 F.2d at 315. While it has been firmly established since *Francis* that those subject to deportation may seek § 212(c) waivers, even though by its own terms § 212(c) is inapplicable to deportation proceedings, we decline to further expand § 212(c) to look beyond the actual charges of removability for purposes of determining comparability. Accordingly, we reject the petitioners' argument that they qualify for § 212(a) waivers. We further affirm our holding in *Valere* that there is no

equal protection violation because there is no "statutory counterpart in § 212(a) for his crime of indecent assault of a minor, [and thus petitioner] is not similarly situated to an inadmissible, returning alien who is eligible to apply for § 212(c) relief." *Valere*, 473 F.3d at 762. Similarly, in this case, because there is no "comparable ground" of exclusion for sexual abuse of a minor, petitioners are not similarly situated to inadmissible aliens and therefore they also cannot establish an equal protection violation. Likewise, because at the time of their pleas the petitioners did not qualify for § 212(c) relief, *St. Cyr* does not apply.

Finally, we note that the Board continues to believe that its approach in *Blake* is appropriate, notwithstanding the Second Circuit's decision, as demonstrated by the Board's recent decision in *In re Jacques*, 2007 WL 2463895 (2007). In *Jacques*, the respondent had sought a § 212(c) waiver. The Board held that Jacques was ineligible for such a waiver because the ground for removal, namely knowingly receiving stolen property, did not have a comparable ground of inadmissibility. The Board also held that "whether the offense in question might also have come under a different ground of removability, i.e., convicted of a crime involving moral turpitude, . . . is not relevant to the inquiry." *Id.* Further, the Board declined to follow the Second Circuit's decision in *Blake*, noting that it was bound to follow precedent from the jurisdiction in which the appeal arises. *Id.* The Board added that its approach has been followed by the Third, Fifth, Seventh and Ninth Circuit, citing *Caroleo v. Gonzales*, 476 F.3d 158 (3d Cir. 2007); *Vo v. Gonzales*, 482 F.3d 363 (5th Cir. 2007); *Valere v. Gonzales*, 473 F.3d 757 (7th Cir. 2007); *Abebe v. Gonzales*, 493 F.3d 1092 (9th Cir. 2007).

**B.  Individual Claims**

Other than his motion to hold this appeal in abeyance and his arguments related to § 212(c), Munoz did not present any additional arguments on appeal. Conversely, Ibarra and Mallari present several additional arguments on appeal. We consider their claims individually below.

**1.  Ibarra**

As noted above, after the Board denied Ibarra's request for a § 212(c) waiver, Ibarra filed a motion to reopen his case, arguing that he was eligible to adjust his status to that of lawful permanent resident given his marriage to a United States citizen. The Board denied Ibarra's motion to reopen and Ibarra filed a notice of appeal of that decision to this court. He also filed a motion to reconsider both the Board's denial of his request for § 212(c) relief and its denial of his motion to reopen. The Board denied Ibarra's motion to reconsider and Ibarra appeals from that denial as well. On appeal, Ibarra argues that the Board erred in denying his motion to reopen and his subsequent motion for reconsideration. The government maintains that we lack jurisdiction to consider Ibarra's appeal, as it relates to the denial of his motion to reopen and the denial of his motion for reconsideration.[6]

---

[6]  The government properly acknowledges that this court has jurisdiction over the § 212(c) waiver issue because that issue presents both a question of law and a constitutional question. Under § 106(a) of the REAL Act of 2005, circuit courts have jurisdiction to review questions of law and constitutional claims notwithstanding other jurisdictional bars. 8 U.S.C. §1251(a)(2)(C).

We begin with the jurisdictional question. Because Ibarra's conviction for sexual abuse of a minor constitutes an aggravated felony under the INA, this court retains only limited jurisdiction to review a final order of removal. *See* 8 U.S.C. § 1252(a)(2)(C) (providing that no court shall have jurisdiction to review any final order of removal against an alien who is removable for having committed an aggravated felony). Specifically, this court may consider only constitutional claims and questions of law raised in proper petitions for review. *See* 8 U.S.C. § 1252(a)(2)(D); *Hernandez-Alvarez v. Gonzales*, 432 F.3d 763, 765 (7th Cir. 2005). Moreover, "where Congress explicitly withdraws our jurisdiction to review a final order of deportation, our authority to review motions to reconsider or to reopen deportation proceedings is thereby likewise withdrawn." *Sarmadi v. INS*, 121 F.3d 1319, 1322 (9th Cir. 1997); *see also Assaad v. Ashcroft*, 378 F.3d 471, 474 (5th Cir. 2004) (explaining that "just as our power to review a final [removal] order is circumscribed by § 1252(a)(2)'s various jurisdiction-stripping provisions, our 'jurisdiction to entertain an attack on that order mounted through filing . . . a motion to reopen' is equally curtailed") (quoting *Patel v. U.S. Att'y Gen.*, 334 F.3d 1259, 1261 (11th Cir. 2003)); *Emile v. INS*, 244 F.3d 183, 189 (1st Cir. 2001) (noting that "[b]ecause [defendant] was convicted of an aggravated felony, we have no authority to consider on direct review any other claim once we conclude that he was legitimately so classified"); *Sousa v. INS*, 226 F.3d 28, 34 (1st Cir. 2000) (holding that "having determined that [the petitioner] is removable as an aggravated felon, our authority to act in this case with respect to the removal proceeding, including incidental rulings on discretionary relief, is at an end"). Thus, we generally lack jurisdiction to consider Ibarra's challenges to the

Board's denial of his motions to reopen and for reconsideration.

In response, Ibarra claims that this court has jurisdiction because the Board's denials of his motion to reopen and motion for reconsideration were based on an incorrect interpretation of the law. Ibarra also argues that by denying him a hearing of his application for adjustment of status based on his wife's visa petition, the Board violated his right to due process.

A "petitioner may not create the jurisdiction that Congress chose to remove simply by cloaking an . . . argument in constitutional garb . . . ." *Torres-Aguilar v. INS*, 246 F.3d 1267, 1271 (9th Cir. 2001). Yet that is exactly what Ibarra seeks to do, by reformulating his arguments as presenting legal and constitutional questions. Ibarra fails to cite any case law that would support his position that the denial of his motion to reopen or for reconsideration implicates legal or constitutional principles. Rather, the decision to grant or deny a motion to reopen is a discretionary decision, even if the alien demonstrates that he is entitled to relief. *See* 8 C.F.R. § 1003.2(a). In this case, the Board denied Ibarra's motion to reopen, finding that Ibarra should have presented his request for adjustment of status much earlier. This conclusion did not involve a question of law. Nor does Ibarra present a valid constitutional claim, as the due process clause does not require the Board to reopen or reconsider cases previously decided or otherwise provide for discretionary relief. *See Dave v. Ashcroft*, 363 F.3d 649, 653 (7th Cir. 2004) (holding that "in immigration proceedings, a petitioner has no liberty or property interest in obtaining purely discretionary relief . . . and the denial of such relief therefore cannot implicate due process"); *Garcia v. Att'y Gen. of*

*U.S.*, 329 F.3d 1217, 1224 (11th Cir. 2003) (holding that "aliens do not enjoy a constitutionally protected liberty interest in a purely discretionary form of relief"). Accordingly, this court lacks jurisdiction to consider Ibarra's challenges to the Board's denial of his motion to reopen and motion for reconsideration. *Id.*[7]

Ibarra also argues that the Board's order stripping him forever of his lawful permanent residence was "an excessive fine" in violation of the Eighth Amendment. The Board's removal order, however, is not a "fine," and thus

---

[7] In addition to arguing that the Board violated his due process rights by denying his motion to reopen and for reconsideration, throughout his appellate briefs Ibarra makes general claims of due process violations. *See, e.g.,* Ibarra Brief at 16 ("Immigration Judge Cuevas violated the Petitioner's rights to due process in denying the request for a continuance."); *id.* ("He further erred and violated the Petitioner's right to due process . . . in denying him a waiver under Section 212(c) of the INA."); *id.* ("The Board erred in concluding that the Petitioner was not eligible for a § 212(c) waiver [and] [i]n so doing, the Board also violated the Petitioner's right to . . . due process of the law."); *id.* at 17 ("Denying the Petitioner a hearing on his application for adjustment of status was a further violation of his right to due process . . . ."); *id.* at 20-21 (The IJ "further violated his right to due process, by allowing the government to file its 95 pages of documents the day before the May 14, 2004 hearing."); *id.* at 22 ("The Board has further violated the Petitioner's right to due process by not following its own precedent."). But other than citing the general due process requirement that a petitioner be provided a meaningful opportunity to be heard, Ibarra does not develop these other due process arguments or cite any applicable case law. Therefore, these claims have been forfeited. *See United States v. Boyle*, 484 F.3d 943, 946 (7th Cir. 2007).

the Excessive Fine Clause of the Eighth Amendment does not apply. The Cruel and Unusual Punishment Clause is likewise inapplicable because "deportation proceedings are not criminal and do not constitute punishment" and thus do not "constitute 'cruel and unusual punishment' under the Eighth Amendment." *Flores-Leon*, 272 F.3d at 440. Accordingly, Ibarra's attempt to invoke the Eighth Amendment fails.

### 2. Mallari

On appeal, in addition to the arguments raised by the other petitioners in relation to the § 212(c) waiver issue, Mallari contends that the law of the case doctrine required the IJ to consider his request for a § 212(c) waiver.[8] As noted above, the IJ originally denied Mallari § 212(c) relief because he lacked the requisite seven years of residency then required for such a waiver. On appeal to the Board, the Board remanded his case to the IJ for consideration of Mallari's request for a § 212(c) waiver. Mallari argues that because the Board previously remanded the case to the IJ to allow him to apply for a § 212(c) waiver, the law of the case doctrine bars the Board from now ruling that he is not entitled to a § 212(c) waiver.

The law of the case doctrine generally provides that "once an appellate court either expressly or by necessary

---

[8] In his appellate brief, Ibarra states in passing: "The law of this case therefore is that the Petitioner is statutorily eligible under *St. Cyr*." *See* Ibarra Petitioner Brief at 21. Ibarra, however, did not further develop this argument and has thus forfeited it. *See Boyle*, 484 F.3d at 946.

implication decides an issue, the decision will be binding upon all subsequent proceedings in the same case." *Key v. Sullivan*, 925 F.2d 1056, 1060 (7th Cir. 1991). The law of the case doctrine has been applied to agency proceedings. *Id. See also Zhang v. Gonzales*, 434 F.3d 993, 998 (7th Cir. 2006). However, the law of the case doctrine is inapplicable in this case because the Board never ruled that Mallari was entitled to a § 212(c) waiver. Rather, the Board remanded the case to allow Mallari to seek a § 212(c) waiver, noting that he now met the required seven years of residency. The Board never addressed the merits of Mallari's petition for § 212(c) relief. Nor did the Board address the question of whether Mallari's basis for removal had a comparable ground in § 212(a). Accordingly, the law of the case doctrine does not apply. *See Key*, 925 F.2d at 1061 (holding that "the law of the case doctrine comes into play only with respect to issues previously determined").

Mallari also seeks to challenge on appeal the Board's denial of his motion to remand. As noted above, while Mallari's appeal from the IJ's denial of his request for a § 212(c) waiver was pending before the Board, Mallari requested a remand to pursue adjustment of status on the basis of an approved relative visa petition filed by his adult son who is a United States citizen. The government opposed Mallari's motion to remand. On September 21, 2006, the Board dismissed Mallari's appeal, concluding that Mallari was ineligible for a waiver under § 212(c). The Board further held that while he might be eligible for an adjustment of status on the basis of a relative visa petition, Mallari had failed to establish any discretionary considerations favoring remand and therefore failed to meet his heavy burden of proving that reopening the

proceedings was warranted. Mallari challenges the Board's denial of his motion to remand.

As with Ibarra's motion to reopen, we lack jurisdiction to consider Mallari's challenge to the Board's denial of his motion to remand. Mallari was charged with removability as an aggravated felon and § 1252(a)(2)(C) precludes all judicial review, other than for constitutional and legal claims. 8 U.S.C. § 1252(a)(2)(C). *See supra* at 51-52.

Mallari argues alternatively that if § 1252(a)(2)(C) acts to bar this court from having jurisdiction over the Board's decision to deny his remand request, the issue is still properly before this court pursuant to § 1252(a)(2)(D), as an issue involving constitutional dimensions. Mallari then posits that "[g]iven the utter lack of attention to Mr. Mallari's life circumstances along with the significant error of facts contained in the Board's decision, it appears Mr. Mallari's constitutional right to due process was violated as the Board's decision is truly void of any discretion." Petitioner Mallari's Reply Brief at 10.

Again, we stress that "petitioner may not create the jurisdiction that Congress chose to remove simply by cloaking an . . . argument in constitutional garb . . . ." *Torres-Aguilar v. INS*, 246 F.3d at 1271. Rather, a constitutional claim "would at least have to be colorable" before a court will exercise jurisdiction to review such a claim or question. *Id.* "To be colorable in this context . . . the claim must have some possible validity." *Id.* (internal quotation omitted). In this case, Mallari failed to present even a colorable due process claim. While a permanent resident alien is entitled to due process, such process is provided in the form of notice of the charges against him and a meaningful opportunity to be heard at a deportation hearing. *Kwong Hai Chew v. Colding*, 344 U.S. 590, 596-98

(1953). In this case, Mallari received both notice and a meaningful opportunity to be heard during the removal proceedings. Due process does not require the Board to provide for additional hearings on remand, and an alien does not have a constitutionally protected interest in receiving discretionary relief. Therefore, Mallari's claim that the Board erred in denying his request for remand fails to state a colorable constitutional claim. We accordingly lack jurisdiction to review that issue on appeal.

### III.

In sum, we reaffirm our holding in *Valere* and hold that aliens, such as those petitioning this court, charged with removability for an aggravated felony involving sexual abuse of a minor do not qualify for a § 212(c) waiver under the comparable grounds test. Moreover, because there is no comparable ground for inadmissibility, petitioners are not similarly situated to those found inadmissible under § 212(a) and therefore there is no equal protection violation. The law of the case doctrine is also inapplicable to Mallari's case because the Board never reached the merits of his § 212(c) petition. Finally, we lack jurisdiction to review the petitioners' challenges to the Board's denials of their subsequent motions. We DENY the petitions for review.

A true Copy:

     Teste:

                           _____

                           *Clerk of the United States Court of*
                              *Appeals for the Seventh Circuit*